# HUTCHINSON *v.* CITY OF VALDOSTA.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF GEORGIA.

No. 146. Submitted January 24, 1913.—Decided February 24, 1913.

Where the charter gives the municipality power to enact through the mayor and council such rules and regulations for its welfare and government. as they may deem best, and the highest court of the State has decided that an ordinance providing for a system of sewerage is within this delegation of power, this court will not declare such ordinance a violation of the due process or equal protection provisions of the Fourteenth Amendment, where the record does not show that the city was induced by anything other than the public good or that such was not its effect.

One of the commonest exercises of the police power of the State or municipality is to provide for a system of sewers and to compel property owners to connect therewith, and this duty may be enforced by criminal penalties without violating the due process or equal protection clauses of the Fourteenth Amendment.

The Federal court will not interfere with the exercise of a salutary power and one necessary to the public health unless it is so palpably arbitrary as to justify the interference.

THE facts, which involve the constitutionality under the due process and equal protection clauses of the Fourteenth Amendment of a police ordinance of the City of Valdosta, Georgia, are stated in the opinion.

*Sarah M. Hutchinson pro se*, and *Mr. Charles S. Morgan*, for appellant.

No appearance for appellees.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Bill in equity brought by appellant to restrain appellees from proceeding against her for the alleged violation of an ordinance of the City of Valdosta.

The facts as alleged are these:

The City of Valdosta is a municipal corporation under the laws of Georgia and the appellees, Varnedoe and Dampier, are respectively the recorder of the mayor's court of the city and marshal. Appellant owns and resides with her husband and children on a lot of land containing about one acre, more or less, situated near three-quarters of a mile from the main business part of the city. The lot is elevated and dry, with good natural surface drainage, clean and clear of garbage or anything which would create a nuisance, free from miasmatic conditions and is healthy, with a wide street on three sides and a railroad right-of-way and almost open country in the rear. She has lived on the lot for more than twenty years.

The city is an inland town, built and standing upon a high pine ridge about seventy-five miles from the Gulf of Mexico "and not one hundred miles from the Atlantic Ocean," with no swamp near. The city has a population of not exceeding five or six thousand white inhabitants and covers an area two miles in extent. It was incorporated by an act of the legislature of Georgia on the twenty-first of November, 1901, under the name and style of the City of Valdosta, and under that name may sue and be sued through its mayor and council, and enact such rules and regulations for the transaction of its business and for the welfare and proper government thereof as said mayor and council may deem best, not inconsistent with the laws of Georgia and of the United States.

On the first of September, 1909, the city passed an ordinance requiring persons and property owners residing upon any street along which sewer mains have been laid, within thirty days after the passage of the ordinance, to install water closets in their houses and connect the same

with the main sewer pipe and to provide the closets with water so that they may be ready for use in the ordinary and usual way, and such persons shall not be permitted to use or keep on their premises a surface closet.

A house without a closet, situated as stated above, is by the passage of the ordinance condemned as a menace to the public health, and the owner of the premises who does not comply with the ordinance-is subject to a fine of not exceeding two hundred dollars or to labor on the streets or public works, or to be confined in the guard house of the city for not exceeding ninety days.

Appellant's house is a wooden building, with rooms only sufficient for the immediate use of herself and family, and to comply with the ordinance she would be compelled to build an addition to the house which, with connection to the sewer and payment for the necessary water, would cost her a considerable sum of money.

The personal appellees are threatening to arrest her for the purpose of fine and imprisonment or labor on the streets for not complying with the ordinance, and to avoid arrest she has at several times left her home and family, to her great inconvenience, mortification and wounded feelings.

That part of the city where her residence is situated is thinly settled and there is no necessity on account of health or sanitary conditions of the city or any part thereof to force her against her wish to connect a water closet in her house by a pipe to the main sewer, and would subject her and her family to the noxious gases, odors and noisome smells from the sewer, thereby endangering her health and impairing her comfort and that of her family, and thereby creating a nuisance.

She had no notice nor opportunity to be heard before the commencement of proceedings to force her before the recorder to answer to the charge of violating the ordinance. For that reason she alleges that the proceedings

were in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States, in that the proceedings deprived her of liberty and property without due process of law and denied to her the equal protection of the laws.

She alleges that the act of the legislature of Georgia incorporating the city, and under which the ordinance was passed and the proceedings against her taken, violates the Fourteenth Amendment to the Constitution because it provides neither for notice nor an opportunity to be heard before the premises are condemned and the owner required to comply with its provisions.

She further alleges that there is a conspiracy against her to force her against her desire to connect with the sewer under color of the act and the ordinance, in violation of the Fourteenth Amendment and the statute laws passed by Congress in pursuance thereof, to her damage in the sum of $10,000.

That at the time of the commencement of the proceedings against her she applied to the Superior Court of the County of Lowndes, State of Georgia, for an injunction restraining the proceedings and, upon the refusal of the court to grant the injunction, carried the case to the Supreme Court of the State, which court refused to require the granting of an injunction.

And, finally, she alleges that the proceedings are discriminating because all of the inhabitants and owners of property are not required to comply with the ordinance and that, therefore, her property is taken without compensation and without due process of law, in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States, and that she is without a remedy at law. She prayed an injunction.

Appellees demurred to the bill, alleging a want of equity, that appellant had a remedy at law, that she was attempting to restrain the prosecution of the city's penal ordi-

nances passed under its police powers for the protection
of the public health, and that it appears from the bill
that the matters and things set out are *res judicata*.
The appellees also by plea set up the defense of *res judicata*
based on the proceedings in the state court referred to in
the bill. A copy of the proceedings was attached to the
plea, from which it appears that she set out in her petition
and amendment to it in the state court the same grounds
of action as in her bill in the case at bar, varying some-
what in details and expression, including the violation of
the Fifth and Fourteenth Amendments to the Constitu-
tion of the United States.

A writ of subpœna was prayed against the City of Val-
dosta, requiring it, by and through its mayor and council,
naming them, to appear and answer the petition. In the
present suit the injunction is prayed against the city and
the recorder and marshal.

The appellees also filed an answer, which appellant
moved to strike out. The motion was denied. The de-
murrer, then coming on to be heard, was sustained "on
each and every ground thereof," and the bill dismissed.
This appeal was then taken.

There was no oral argument of the case, and in her brief
appellant says that "the jurisdiction of the United States
Circuit Court to take cognizance of the case depends
largely upon the Fourteenth Amendment to the Consti-
tution of the United States," and then discusses the
power of the court to restrain unconstitutional exer-
cise of power by States and their officers and municipali-
ties. On that proposition we need not waste any time.
We have seen that the Circuit Court sustained the de-
murrer not only on the ground that the ordinance did not
violate the Constitution of the United States but also on
the ground that the suit in the state court which appellant
alleges was brought and which was determined against
her was *res judicata*. But passing that ground, we

think the court's ruling was right on the other ground; that is, the ordinance does not violate the Fourteenth Amendment of the Constitution of the United States. According to the bill, the city is given the power through its mayor and council "to enact such rules and regulations for the transaction of its business and for the welfare and proper government thereof," as the mayor and council may deem best, and the bill shows that the courts of the State decided that the ordinance was within this delegation of power. It is the commonest exercise of the police power of a State or city to provide for a system of sewers and to compel property owners to connect therewith. And this duty may be enforced by criminal penalties. *District of Columbia* v. *Brooke*, 214 U. S. 138. It may be that an arbitrary exercise of the power could be restrained, but it would have to be palpably so to justify a court in interfering with so salutary a power and one so necessary to the public health. There is certainly nothing in the facts alleged in the bill to justify the conclusion that the city was induced by anything in the enactment of the ordinance other than the public good or that such was not its effect.

*Decree affirmed.*