Jerry SHRADER et al., Plaintiffs,

v.

A. W. HORTON, Jr., et al., Defendants.

Civ. A. No. 78–0081–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

May 22, 1979.

S. Strother Smith, III, Smith, Robinson & Vinyard, Abingdon, Va., Z. Dale Christian, Bluefield, Va., for plaintiffs.

Roger W. Mullins, Atty. for the Commonwealth, Tazewell County, Tazewell, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Plaintiffs Jerry Shrader and ninety-eight other citizens of the Abbs Valley Community, Tazewell County, Virginia, bring this action challenging a mandatory connection ordinance for a new public water system in the Boissevain-Abbs Valley area of Tazewell County. The named defendants are A. W. Horton, Jr., Richard I. Cooley, Walter Stapleton, John Martin, G. W. Edwards, Larry Smith, and Charles Gilmore, who are members of the Tazewell County Water and Sewer Authority, and defendants Ben L. Susman, Leslie Ballard, and William J. Hankins, who are members of the Tazewell County Board of Supervisors. The case is currently before this court on defendants' motion to dismiss, supported by defendants' memorandum of law. Plaintiffs have submitted an amended complaint and a memorandum of law in opposition to defendants' motion to dismiss.

This court has granted the Virginia State Board of Health's and the Virginia State Water Control Board's motion to intervene as party defendants pursuant to Fed.R. Civ.P. 24(a)(2).

### I.

Plaintiffs' amended complaint sets forth the following allegations: Plaintiffs are either residents or landowners of Tazewell County, Virginia, in the Abbs Valley Community, who have for two or more years owned and operated their own individual or collectively approved water supply systems which have been approved by the State Water Authority as being sanitary and suitable for drinking. In many instances the plaintiffs have had to pay for their interest in their water supply, either directly by paying for construction of a water system or indirectly by paying the cost in the purchase price of their property. Often the cost of these systems has been several thousand dollars.

Plaintiffs further allege that the defendants, as members of the Tazewell County

Water and Sewer Authority and the Tazewell County Board of Supervisors, plan to establish a public water system and run water lines adjacent to plaintiffs' property. Defendants, under the authority of Va.Code Ann. § 15.1–1261 (Repl.Vol.1973),[1] enacted an ordinance directing that landowners and others occupying land abutting on a street with a water line be required to hook on, and defendants notified plaintiffs that they would be required to connect to a proposed water system due for construction in the Boissevain-Abbs Valley communities. Plaintiffs would be required to pay an initial hookup fee and monthly assessments for water used thereafter.

Plaintiffs, objecting to the mandatory connection ordinance on the grounds that it is a discriminatory and unconstitutional taking of property without compensation and is a violation of the federal antitrust laws, ask this court for a permanent injunction enjoining the defendants from enforcing the offending ordinance unless the defendants proceed against plaintiffs under standard Virginia condemnation procedures. Plaintiffs also ask this court for a declaratory judgment setting forth plaintiffs' rights under the United States Constitution.

This court now turns to defendants' motion to dismiss, and each contention is discussed below.

## II.

### A. *The Johnson Act*

Defendants' first argument is that the Johnson Act, 28 U.S.C. § 1342, precludes this court from exercising jurisdiction of this case. The Act provides as follows:

"The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and,

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such State."

28 U.S.C. § 1342.

Defendants contend that the Act establishes a "hands-off policy" by the federal district courts in matters dealing with the established legislative policy of a state's public utilities.

Plaintiffs assert that the Johnson Act is inapplicable, as the instant case does not involve the enjoining or restraining of "any order affecting rates chargeable by a public utility." Plaintiffs further contend that neither of the remaining four criteria of 28 U.S.C. § 1342 apply. An inspection of the Act's language reveals that the statute does not restrict the district court's jurisdiction unless the case before the court involves "any order affecting rates chargeable by a public utility." Therefore, the first issue that this court must resolve is whether defendants' proposed action in forcing plaintiffs to connect to the public water supply,

1. Section 15.1–1261 provides:

"Upon the acquisition or construction of any water system or sewer system under the provisions of this chapter, the owner, tenant, or occupant of each lot or parcel of land which abuts upon a street or other public way containing a water main or a water system, a sanitary sewer which is a part of or which is served or may be served by such sewer system and upon which lot or parcel a building shall have been constructed for residential, commercial or industrial use, shall, if so required by the rules and regulations or a resolution of the authority, with concurrence of such local government, municipality, or county that may be involved, connect such building with such water main or sanitary sewer, and shall cease to use any other source of water supply for domestic use or any other method for the disposal of sewage, sewage waste or other polluting matter. All such connections shall be made in accordance with rules and regulations which shall be adopted from time to time 'by the authority, which rules and regulations may provide for a charge for making any such connection in such reasonable amount as the authority may fix and establish."

under the authority of Va.Code Ann. § 15.-1–1261 (Repl.Vol.1973), will be an "order affecting rates."

Defendants argue that requiring plaintiffs to connect to the public system will increase the number of public users and thereby reduce the costs of the system to those who use it; hence, it is an "order affecting rates." Plaintiffs counter by saying that this is not a sufficient basis for invoking the Johnson Act, as plaintiffs are not challenging in any way the rates for water charged by defendant; plaintiffs merely object to being forced to hook on to the public system and forego the use of their own supplies.

 This court is persuaded by plaintiffs' argument. Congress enacted the Johnson Act as a measure to restrict federal injunctions against state orders setting rates for public utilities. See 17 Wright & Miller, *Federal Practice and Procedure* § 4236, p. 407 (1978); Annot. 28 A.L.R.Fed. 422 (1976). Congress' purpose was to channel normal rate litigation into the state courts while leaving the federal courts free in the exercise of their equity powers to relieve against arbitrary action. *City of Meridian, Miss. v. Mississippi Valley Gas Co.*, 214 F.2d 525 (5th Cir. 1954). However, defendants' position that the connection ordinance is an "order affecting rates" is untenable. Plaintiffs have not challenged in any way the water rates that defendants propose to charge; plaintiffs object to the mandatory connection requirement.

Defendants' argument—that mandatory connection is an "order affecting rates" because the number of users will ultimately affect the monthly charge per user—proves too much, for other courts have refused to apply the Johnson Act even though the challenged activity of the state would ultimately bear on a rate charged the public. In *Alabama Public Service Commission v. Southern Railway Co.*, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951), the railroad sued in federal district court to enjoin the members of the Alabama Public Service Commission and the Alabama Attorney General from enforcing a state statute prohibiting discontinuance of certain trains. The Commission had ordered the railroad to continue the rail service in the public interest, even though the railroad protested that its revenues on that particular service were falling far short of meeting expenses. The railroad, instead of following through on its state administrative remedies, brought an action in federal district court alleging that being required to operate the trains at a loss amounted to a confiscation of its property in violation of the Fourteenth Amendment's Due Process Clause.

The Supreme Court held that the district court should have dismissed the case on the grounds that comity required the railroad to pursue its state court remedies instead of turning to federal court. However, the Court wrote of the Johnson Act as follows:

"The Johnson Act, 48 Stat. 775 (1934), now 28 U.S.C. (Supp. III) § 1342, does not affect the result in this case. That Act deprived federal district courts of jurisdiction to enjoin enforcement of certain state administrative orders affecting public utility rates where 'A plain, speedy and efficient remedy may be had in the courts of such State.' *As the order of the Alabama Service Commission involved in this case is not one affecting appellee's rates, the Johnson Act is not applicable.*" 341 U.S. at 350, 71 S.Ct. at 769. (Emphasis supplied.)

The Court's language is at odds with defendants' argument, for surely the railroad's having to continue unprofitable rail service would ultimately bear on the rates charged the public in much the same way that the number of water users would affect the monthly water rate. Yet the Court plainly stated that the Johnson Act did not apply to the railroad case, and this court in ruling on defendants' motion to dismiss feels compelled to follow the Supreme Court's lead.

Other courts have reached decisions that require rejection of defendants' tenuous argument about an "order affecting rates." In *Limuel v. Southern Union Gas Company*, 378 F.Supp. 964 (W.D.Tex.1974), the consumers brought a Section 1983 action

against a gas company challenging the company's termination of service for failure to pay bills. The court noted that the action was not one to enjoin the operation of "any order affecting rates" and therefore was outside the operation of 28 U.S.C. § 1342. 378 F.Supp. at 966. *See also, Cody v. Union Electric Co.*, 545 F.2d 610 (8th Cir. 1976); *United States v. Public Service Commission*, 422 F.Supp. 676 (D.Md.1976).

*Tennyson v. Gas Service Company*, 506 F.2d 1135 (10th Cir. 1974), 28 A.L.R.Fed. 408 (1976), cited by defendants, is not controlling in this case. In *Tennyson*, a gas company imposed late charge assessments as an additional charge upon certain customers for failure to pay their bill within a specified time. When consumers sued the gas company in federal court and sought to avoid the reach of the Johnson Act by arguing that the late charge assessment was not a "rate," the Circuit Court of Appeals for the Tenth Circuit disagreed and held that the Johnson Act barred federal jurisdiction. The court wrote that the "Johnson Act proscribes federal interference not with a 'rate' simpliciter but with 'any order affecting rates.'" 506 F.2d at 1140, 28 A.L.R.Fed. at 416. *Tennyson* is distinguishable from the instant case, however, because the late charge assessments had been presented to the state's corporation commission as an integral part of the rate structures. This court can find no parallel between late charge assessments and mandatory connection ordinances which would permit this court to apply the Johnson Act in the case at bar.

Accordingly, this court must deny defendants' motion to dismiss for lack of jurisdiction based on the Johnson Act.

## B. *Abstention and Justiciability*

Defendants' next contention is that established principles of abstention, comity, and justiciability prevent this court from assuming jurisdiction. Defendants maintain that the controversy surrounding the mandatory water connection is a matter of state internal administrative regulation and that for this court to assume jurisdiction would be a needless and avoidable federal intervention in a case involving a predominate state interest. Defendants further argue that plaintiffs have prematurely filed this action because plaintiffs' injury, if any, will occur only upon the completion of the water project; hence, the controversy is not a case which is ripe for adjudication.

■ This court cannot agree with defendants' position on abstention. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Abdication of the obligation to decide cases can be justified under the abstention doctrine only in that narrow class of cases involving exceptional circumstances where ordering the parties to repair to state courts would clearly serve important countervailing interests. *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959).

■ The instant case does not fall within that narrow class of cases where exceptional circumstances justify abstention. There is no action pending in a Virginia court having concurrent jurisdiction. The Virginia law is not unsettled, nor will resolution of state law issues dispose of the instant controversy without consideration of federal questions. In *Weber City Sanitation Commission v. Craft*, 196 Va. 1140, 87 S.E.2d 153 (1955), the Virginia Supreme Court, in ruling on an issue almost identical to the question before this court, held that the Virginia statute providing for mandatory water system connections was a valid exercise of state police power and was not an unconstitutional taking of private property without just compensation. Therefore, as the traditional grounds for abstention in civil actions are not present, this court has no power to decline to decide a case that is properly before it. *Timmons v. Andrews*, 538 F.2d 584 (4th Cir. 1976). Accordingly, defendants' motion to dismiss on the grounds of abstention and comity is properly denied.

Defendants' motion to dismiss for lack of justiciability and ripeness must likewise be denied. Defendants have expressed their intention to enforce the already approved ordinance requiring connection to the public water system, and defendants have notified plaintiffs of the impending water system and their obligation to connect. The controversy before this court is not hypothetical, abstract, or academic, and the controversy arises from adverse legal interests and admits of specific relief through a decree from this court, such as issuance of an injunction or declaratory judgment against defendants. *See Aetna Life Insurance Company v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937). The mere fact that defendants have not yet completed those acts which plaintiffs seek to prevent does not preclude this case from being ripe for a judicial determination of the legal rights of the parties involved. Plaintiffs have prayed for a declaratory judgment against defendants, and the power of this court to issue declaratory judgments pursuant to 28 U.S.C. §§ 2201 and 2202 is well settled.

Hence, this court cannot grant defendants' motion to dismiss on jurisdictional grounds, and the court now turns to the substantive issues involved.

### III.

#### A. *The Antitrust Claim*

Plaintiffs allege that the establishment of a public water system with a mandatory hookup requirement is contrary to the Sherman and Clayton Antitrust Acts, 15 U.S.C. §§ 1, 2, and 8, because such a water system eliminates all competition from private water systems. Plaintiffs say that defendants are intentionally monopolizing the water supply enterprise, to the detriment of plaintiffs who will lose their investments in their own systems, and that defendants' monopoly will have a deleterious effect on both intra- and interstate water system contractors and suppliers. Plaintiffs assert that this court has jurisdiction of this claim under 15 U.S.C. § 15.

Defendants move this court to dismiss plaintiffs' antitrust claim on the basis of the state action immunity doctrine outlined in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The *Parker* Court reviewed a state statute authorizing an anticompetitive marketing program intended to maintain the price of California raisins. The Court held that the Sherman Act was not violated when a state established certain anticompetitive restraints "as an act of government." *Id.* at 352, 63 S.Ct. 307. The Court could find no language in the Sherman Act which would suggest that the Act was intended by Congress to restrain "state action or official action directed by a state." *Id.* at 351, 63 S.Ct. at 313.

Recent Supreme Court opinions, however, have demonstrated that *Parker* is not to be interpreted as an absolute grant of immunity. *See Cantor v. Detroit Edison Co.*, 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976); *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). The Court's latest pronouncement on the state immunity doctrine is *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978). In *Lafayette*, the municipalities owned and operated electric utility systems which extended beyond their municipal borders. In litigation between the municipalities and a privately owned electric power company, the power company sought relief against the cities based on an antitrust theory. The company alleged that the municipalities had contracted to supply gas and water to the company's electricity customers only if the customers would also purchase electricity from the municipalities. The cities moved to dismiss the claim on the grounds of the state action exemption.

The *Lafayette* Court, rejecting the municipalities' contention that they were automatically entitled to *Parker* immunity simply because of their governmental status, eroded the *Parker* state action immunity doctrine by holding that municipalities enjoy immunity from the antitrust laws under *Parker* only in limited circumstances. The Court wrote that "the *Parker* doctrine exempts only anticompetitive conduct en-

gaged in as an act of government by the State as sovereign, or, by its subdivisions, pursuant to state policy to displace competition with regulation or monopoly public service." 435 U.S. at 413, 98 S.Ct. at 1137. In describing the reach of its opinion, the Court stated that "[our decision] means only that when the State itself has not directed or authorized an anticompetitive practice, the State's subdivisions in exercising their delegated power must obey the antitrust laws." *Id.* at 416, 98 S.Ct. at 1138.

■ That the defendants' activity in enforcing the mandatory connection requirement falls within the protection of the *Parker* immunity seems to this court to be beyond doubt. State policy to provide a monopoly public service could scarcely be more clearly stated than it is in Va.Code Ann. § 15.1–1261, which plainly shows that the Virginia legislature as an act of government has authorized local water and sewer authorities to enact a mandatory connection ordinance. The Virginia statute evinces a legislative concern for the health and safety of its citizens, and the provision and regulation of a healthful public water supply is at the core of Virginia's police power; hence, the *Parker* immunity is properly extended to protect the local water and sewer authorities acting pursuant to their grant of power from the state. *See Bates v. State Bar of Arizona*, 433 U.S. 350, 361, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). In addition, the defendants have engaged in building a public water system not as a business enterprise or profit-making venture but rather as an act of government in insuring an adequate water supply for the public, and this would appear to be a factor under the *Lafayette* Court's analysis.[2] Neither a county school system nor a municipal fire department is threatened by the Sherman Act regardless of the market share the government may attain, Sullivan, *Antitrust,*

p. 739 (1st ed. 1977), and in light of the fact that providing a suitable public water supply has traditionally fallen squarely with the state's exercise of its police power, this court refuses to find that a mandatory water system hookup ordinance falls within the coverage of the antitrust laws.

Accordingly, this court pursuant to Fed. R.Civ.P. 12(b)(6) dismisses plaintiffs' antitrust claims.

## B. *The "Taking" Claim*

Plaintiffs allege that the ordinance requiring them to connect to the public water system and abandon their own water sources is a "taking" without just compensation of their property interests in their private water supplies, and plaintiffs assign defendants' activities as a violation of their civil rights under the Fifth and Fourteenth Amendments. Thus, plaintiffs claim a cause of action under 42 U.S.C. §§ 1983 and 1985, with jurisdiction in this court under 28 U.S.C. § 1343(3). Plaintiffs augment their civil rights claim by asserting that, because all residents of Tazewell County are not required to connect to the proposed water system, the defendants are discriminating invidiously against plaintiffs in violation of the Fourteenth Amendment's Equal Protection Clause. Plaintiffs round out their claims by saying that defendants are conspiring among themselves to violate plaintiffs' civil rights.

Defendants have moved their court to dismiss plaintiffs' claims pursuant to Fed.R. Civ.P. 12(b)(6).

Plaintiffs have presented this court with an issue that commonly arises when governmental activity benefits the public generally at the expense of private interests: when does a publicly inflicted private injury rise to the level of a "taking," for which the Constitution requires payment of compensa-

---

**2.** *See* Meirowitz, *The Erosion of State Action Immunity from the Antitrust Laws: City of Lafayette v. Louisiana Power & Light Co.,* 45 Brooklyn L.Rev. 165 (1978), where the author states that while the *Lafayette* opinion is confusing, the one central idea seems to be that if a party claims *Parker* immunity, the judicial

inquiry will focus not on the governmental status of the party but rather on the activity involved. If the anticompetitive conduct can be characterized as an act of government rather than a proprietary venture, immunity will likely be granted.

tion? The general question admits of no easy answer, for the courts in grappling with this issue have produced decisions as diverse as the factual situations that called for judicial decisionmaking. *See* Michelman, *Property, Utility, and Fairness: Comments on the Ethical Foundations of "Just Compensation" Law,* 80 Harv.L.Rev. 1165 (1967); Sax, *Takings and the Police Power,* 74 Yale L.J. 36 (1964).

However, while the question of what constitutes a "taking" can be a difficult one, the United States Supreme Court in deciding *Hutchinson v. City of Valdosta,* 227 U.S. 303, 33 S.Ct. 290, 57 L.Ed. 520 (1913), has dealt with issues remarkably similar to those that plaintiffs raise in the instant case. In *Hutchinson,* the city passed an ordinance requiring property owners residing upon any street along which sewer lines had been laid to install water closets in their houses and connect it with the public sewer. The ordinance prohibited those property owners to keep a surface closet on their premises.

The appellant in *Hutchinson,* faced with possible criminal sanctions, challenged the ordinance on essentially the same grounds that plaintiffs in the instant case have asserted: that the ordinance violated the Fifth and Fourteenth Amendments by depriving her of liberty and property without due process of law; that the ordinance denied her equal protection of the laws because all citizens were not required to comply with the ordinance; and that the city officials were conspiring against her. The facts revealed that appellant's residence was in a thinly settled part of the city where failure to connect to the town sewer would not affect the health or sanitary conditions of the city. To comply with the city ordinance would put appellant to considerable expense, for she would have to build an addition to her house, pay for the sewer connection, and pay for the necessary water. The *Hutchinson* landowner had had no notice or opportunity to be heard before commencement of proceedings against her for violation of the ordinance.

The Supreme Court held in a short opinion that the city ordinance did not violate the Fourteenth Amendment. The Court wrote:

> "It is the commonest exercise of the police power of a State or city to provide for a system of sewers and to compel property owners to connect therewith. And this duty may be enforced by criminal penalties. *District of Columbia v. Brooke,* 214 U.S. 138, 29 S.Ct. 560, 53 L.Ed. 941. It may be that an arbitrary exercise of the power could be restrained, but it would have to be palpably so to justify a court in interfering with so salutary a power and one so necessary to the public health."

227 U.S. at 308, 33 S.Ct. at 292.

This court can find no meaningful distinction between mandatory sewer connections and mandatory water connections; therefore, the Court's *Hutchinson* opinion clearly disposes of all of plaintiff's claims in the case *sub judice.*

The Virginia Supreme Court cited *Hutchinson* in *Weber City Sanitation Commission v. Craft,* 196 Va. 1140, 87 S.E.2d 153 (1955), a decision sustaining the validity of the Virginia mandatory connection statute. In *Weber City Sanitation Commission,* the landowner refused to connect with the municipality's water works system, and when the sanitation commission sought to compel him to connect and pay the water rates, the landowner contended that the Virginia statute was repugnant to the Fifth and Fourteenth Amendments to the United States Constitution. The Virginia court held that the mandatory connection ordinance was a valid exercise of the state's police power. This court feels compelled to concur with the Virginia Supreme Court.

Plaintiffs have failed to cite this court any authority which would supercede the United States Supreme Court's decision in *Hutchinson,* and this court finds the *Hutchinson* decision squarely on point. This court sees no need to expound on those numerous state court cases which have favorably cited *Hutchinson.* Therefore, this court is of the opinion that defendants' motion to dismiss should be granted.

## IV.

This court having determined, for the reasons stated above, that defendants' motion to dismiss should be granted for failure of the plaintiffs to state a claim, it is unnecessary for this court to consider defendants' remaining motions concerning various individual defendants.