386 S.E.2d 483

## KINGMILL VALLEY PUBLIC SERVICE DISTRICT

v.

## RIVERVIEW ESTATES MOBILE HOME PARK, INC., etc., and R.E.S., Inc.

### No. 19018.

Supreme Court of Appeals of West Virginia.

Oct. 27, 1989.

---

Glenn O. Schumacher, Mannington, for appellant.

Michael John Aloi, Manchin, Aloi & Carrick, Fairmont, for appellees.

MILLER, Justice.

We address the question of whether the owner of a private sewer system who has been compelled to join the sewer lines of a public service district (PSD) may claim that the disuse of its system constitutes a *de facto* taking and recover its value from the PSD.

This issue arose when the Kingmill Valley PSD sued Riverview Estates Mobile Home Park, Inc. (Riverview) and R.E.S., Inc.[1] in the Circuit Court of Marion County to collect unpaid sewer fee charges. The PSD had previously ordered Riverview to abandon its private sewer system and to connect to the PSD's lines pursuant to W.Va.Code, 16–13A–9 (1981).[2] Riverview filed a counterclaim asserting that the forced abandonment of its sewage treatment facility constituted an unlawful "taking" of private property in violation of Article III, Section 9 of the Constitution of West Virginia.[3] Riverview sought to re-

---

1. R.E.S., Inc., currently owns the property and has a contract to sell it to Riverview. For convenience, we will use the term "Riverview" throughout this opinion to refer to both entities, as their interests are the same on this issue.

2. The pertinent portion of W.Va.Code, 16–13A–9 (1981), stated:

   "Any district furnishing sewer facilities within the district may require all owners, tenants or occupants of any houses, dwellings and buildings located near any such sewer facilities, where sewage will flow by gravity or be transported by such other methods approved by the department of health from such houses, dwellings, or buildings into such sewer facilities, to connect with and use such sewer facilities, and to cease the use of all other means for the collection, treatment and disposal of sewage and waste matters from such houses, dwellings and buildings[.]"

   There is no issue as to the flow by gravity in this case. It should also be noted that Riverview was required to connect to the PSD system in January, 1986. Although W.Va.Code, 16–13A–9, was subsequently amended in 1986, this language remains substantially the same.

3. W.Va. Const. art. III, § 9 provides:

   "Private property shall not be taken or damaged for public use, without just compensation; nor shall the same be taken by any company, incorporated for the purposes of internal improvement, until just compensation shall have been paid, or secured to be paid, to the owner; and when private property shall be taken, or damaged, for public use, or for the use of such corporation, the com-

cover the value of its system, which the parties stipulated to be worth $33,700.

The case was submitted to the circuit judge for decision on the pleadings, on certain factual stipulations, and on the briefs of the parties. The court rendered judgment in favor of the PSD for its unpaid sewer fees and concluded that Riverview was not entitled to any recovery on its counterclaim.

The appellant, Riverview, does not argue that the act creating the PSD is constitutionally infirm, apparently in acknowledgement of *State ex rel. McMillion v. Stahl,* 141 W.Va. 233, 89 S.E.2d 693 (1955), where we upheld the original enactment against a variety of constitutional challenges.[4] Nor does the appellant rely on cases that consider whether zoning or other regulations which substantially diminish the value of property by restricting the use to which it can be put effect a "taking" of property.[5]

There are not many cases that are factually analogous to the case at bar, perhaps as a result of an early United States Supreme Court decision, *Hutchinson v. City of Valdosta,* 227 U.S. 303, 33 S.Ct. 290, 57 L.Ed. 520 (1913). *Hutchinson,* which is cited in most of the more recent cases, involved a statute which compelled the homeowner to attach to the city's sewer line and to install indoor "water closets"

under penalty of criminal punishment. The homeowner complained that she had an adequate outdoor facility and that it would involve considerable expense to shift to the new scheme. Accordingly, she asserted that the mandatory connection to the city sewer constituted a taking of property without just compensation under the Fifth and Fourteenth Amendments to the United States Constitution. The Supreme Court, with commendable brevity, stated:

"It is the commonest exercise of the police power of a State or city to provide for a system of sewers and to compel property owners to connect therewith. And this duty may be enforced by criminal penalties. *District of Columbia v. Brooke,* 214 U.S. 138 [29 S.Ct. 560, 53 L.Ed. 941 (1909)]. It may be that an arbitrary exercise of the power could be restrained, but it would have to be palpably so to justify a court in interfering with so salutary a power and one so necessary to the public health." 227 U.S. at 308, 33 S.Ct. at 292, 57 L.Ed. at 523.

*See also Shrader v. Horton,* 471 F.Supp. 1236 (W.D.Va.1979), *aff'd* 626 F.2d 1163 (4th Cir.1980); *City of Sierra Vista v. Cochise Enterprises, Inc.,* 144 Ariz. 375, 697 P.2d 1125 (App.1984); *State v. City of Miami,* 157 Fla. 726, 27 So.2d 118 (1946); *Renne v. Township of Waterford,* 73 Mich. App. 685, 252 N.W.2d 842 (1977); *Com-*

---

pensation to the owner shall be ascertained in such manner, as may be prescribed by general law; provided, that when required by either of the parties, such compensation shall be ascertained by an impartial jury of twelve freeholders."

**4.** The single Syllabus of *Stahl* states:
"Chapter 147, Acts of the Legislature, 1953, Regular Session, authorizing the creation of Public Service Districts by the County Courts of this State, defining the powers and duties of the governing boards of such districts in the acquisition, construction, maintenance, operation, improvement and extension of property supplying water and sewerage services, and authorizing the issuance of bonds of such districts payable solely from revenue to be derived from the operation of such properties, does not violate any provision of the Constitution of this State or the Fourteenth Amendment to the Constitution of the United States."

Although *Stahl* did not expressly discuss the right of a state, through its police powers, to regulate sewer systems and to delegate the power to do so to a subordinate public body, such right has been clearly recognized. *E.g., West Virginia Water Serv. Co. v. Cunningham,* 143 W.Va. 1, 98 S.E.2d 891 (1957); *State ex rel. Bibb v. Chambers,* 138 W.Va. 701, 77 S.E.2d 297 (1953); *Hayes v. Town of Cedar Grove,* 126 W.Va. 828, 30 S.E.2d 726 (1944), *overruled on other grounds, Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975).

**5.** *E.g., First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); *Hodel v. Irving,* 481 U.S. 704, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987); *Keystone Bituminous Coal Ass'n v. De Benedictis,* 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987); *Penn Central Transp. Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

monwealth ex rel. State Water Control Bd. v. County Utilities Corp., 223 Va. 534, 290 S.E.2d 867 (1982).

█ The Virginia Supreme Court in *Water Control Bd., supra,* offered the most common reason that citizens who have been forced to abandon their own private facilities to attach to public facilities cannot claim an unlawful appropriation: "All citizens hold property subject to the proper exercise of the police power for the common good.... Even where such an exercise results in substantial diminution of property values, an owner has no right to compensation therefor." 223 Va. at 542, 290 S.E.2d at 872. (Citations omitted).

We have reached a similar conclusion in cases involving various aspects of the exercise of police powers, as illustrated by Syllabus Point 7 of *City of Welch v. Norfolk & Western Ry. Co.,* 104 W.Va. 660, 140 S.E. 839 (1927):

"Uncompensated obedience to a regulation enacted for the public safety, or which may hereafter be enacted, under the police power of the State, is not a taking or damaging without just compensation of private property, or private property affected with a public interest."

See also *Trovato v. Town of Star City,* 166 W.Va. 699, 276 S.E.2d 834 (1981); *Singer v. Davenport,* 164 W.Va. 665, 264 S.E.2d 637 (1980); *Farley v. Graney,* 146 W.Va. 22, 119 S.E.2d 833 (1960).

Riverview places considerable reliance on our recent case of *Broadmoor/Timberline*

Apts. v. Public Serv. Comm'n, 180 W.Va. 387, 376 S.E.2d 593 (1988). There, the Public Service Commission ordered the City of Morgantown to acquire the private sewer lines of an apartment complex to extend sewer service to adjoining landowners. The apartment complex had already hooked its lines to the city sewer system, and the tenants were being directly billed by the city.

Riverview seizes on the fact that in *Broadmoor* the Public Service Commission had ordered the city to reimburse the apartment complex for the value of its sewer lines.[6] In the present case, however, the PSD is not acquiring Riverview's sewer system in order to extend service to adjoining landowners. Rather, it is utilizing its authority under W.Va.Code, 16–13A–9, to require Riverview to connect to its sewer facility. We do not find that *Broadmoor* controls in this case.

█ We, therefore, conclude that where a PSD, pursuant to W.Va.Code, 16–13A–9, requires a property owner, tenant, or occupant to connect onto its sewer system and to abandon a private sewer system located on the property, such person cannot recover from the PSD the value of such private system on the ground that such abandonment constitutes a taking of private property without just compensation within the meaning of Article III, Section 9 of the Constitution of West Virginia.

For the foregoing reasons, the judgment of the Circuit Court of Marion County is

---

6. We note that the compensation issue was not disputed in *Broadmoor,* as the city raised no objection to that portion of the order. It is clear from Syllabus Point 3 of *Broadmoor* that the opinion was limited to rather specific facts:

"An order of the public service commission will not be reversed at the behest of the owner of an apartment complex, whose sewer lines are ordered to be acquired by a public utility under the following conditions: (1) the public service commission has found the utility is already providing sewer service with the approval of the landlord to tenants of the complex, which service is separately billed; (2) the public service commission has found that the landlord has previously allowed third parties outside the apartment complex to tap on and receive the utility's sewer service; (3) the public service commission has found that the acquisition of the sewer lines is necessary to provide extension of the utility's sewer service to other parties and will enable the utility to adequately inspect and maintain the acquired lines; (4) the public service commission has required the utility to pay the landlord the value of the acquired lines either through a negotiated price or through eminent domain;

affirmed.[7]

Affirmed.

and (5) the utility has participated in the case and raises no objection to the order."

7. The PSD asserted as a cross-assignment of error that the circuit court erred in awarding judgment for only $17,526.26. However, we are unable to discern from the brief record before us the nature of the calculations and, therefore, decline to address the cross-assignment of error.