**Owen S. DURIGAN, Plaintiff–Appellant,**

v.

**SANITARY DISTRICT NO. 4–TOWN OF BROOKFIELD, et al., Defendants–Appellees.**

No. 00–3024.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 22, 2001.*

Decided Feb. 26, 2001.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before Hon. WILLIAM J. BAUER,
Hon. RICHARD D. CUDAHY, and Hon.
RICHARD A. POSNER, Circuit Judges.

ORDER

Sanitary District No. 4, the municipal entity that provides water and sewer services in Brookfield, Wisconsin, ordered Owen Durigan to connect his Brookfield home to the municipal water system. Durigan prefers, however, to pump his drinking water from a private well on his property. He refused to comply and filed this pro se civil rights lawsuit against the Sanitary District, its Commissioners, and the Town of Brookfield, seeking relief from the District's order. The district court granted summary judgment to the defendants. Durigan appeals, and we affirm.

When Durigan bought his home some time ago, Brookfield's municipal water system did not reach his subdivision, Lookout Hill, so he pumped his drinking water from a private well on his property. In 1995 Sanitary District No. 4 notified Durigan and his neighbors that it planned to extend water service to Lookout Hill and that all subdivision residents would be required to connect. Durigan sought to head off the District's expansion by suing it in state court. Durigan claimed that the District was required to submit its proposed expansion to a local referendum, but the Wisconsin courts dismissed his complaint and rejected his appeals.

In May 1997 the Sanitary District amended an existing ordinance to require all Brookfield property owners to connect to the municipal water supply within two years of the installation of a water main abutting their property. If a property owner failed to comply, the District was authorized to complete the connection and charge the property owner for the work. Brookfield simultaneously enacted § 15.22 of the Town Code requiring that property owners disconnect their homes from and discontinue using any private wells on their property once they connected to the water main. Property owners who wished to maintain their private wells after connecting to the water main could apply to the Sanitary District and the Wisconsin Department of Natural Resources for a Well Operation Permit, which would be conditioned upon water quality tests verifying that the private well was not contaminated.

The Sanitary District installed a water main abutting Durigan's property in July 1997, and promptly mailed him a Notice to Connect his home to the water main by July 1999. The notice advised Durigan that he had to abandon his well or seek a permit to continue using it. Durigan did not connect his home to the water system. Eighteen months later he filed this civil

rights lawsuit under 42 U.S.C. § 1983 in the district court complaining that the Sanitary District, its Commissioners, and Brookfield deprived him of a property and liberty interest in violation of the Fourteenth Amendment, and conspired to deprive him of his civil rights in violation of 42 U.S.C. § 1985. He also claimed that Section 281.45 of the Wisconsin Statutes, the legislation enabling local governments to enact ordinances compelling connection to centralized municipal water systems, was unconstitutionally vague or overbroad.

The defendants moved for summary judgment. Their motion, however, did not include the required notice informing Durigan of the consequences of failing to respond, *see Lewis v. Faulkner,* 689 F.2d 100, 102 (7th Cir.1982); E.D. Wis. Local R. 6.04, nor did it generally comply with Federal Rule of Civil Procedure 56 or contain a proper legal argument or proposed findings of fact as required by Local Rule 6.05(a). Citing these grounds, the district court declined to rule on the merits of the motion and denied it without prejudice. Durigan then moved the court to strike the defendants' pleaded affirmative defenses of res judicata and failure to exhaust state remedies, and to reject any further summary judgment motions from the defendants because they had "already utilized this opportunity." The district court denied Durigan's motion without prejudice for failure to comply with the Federal Rules of Civil Procedure and the Local Rules, and advised Durigan that he needed to file a proper summary judgment motion to obtain the requested relief.

The defendants renewed their motion for summary judgment, this time complying with the rules. After Durigan filed two responses, the district court granted the defendants' motion. The court found that the ordinances aimed to promote the public welfare and safety by preventing contamination of Brookfield's water system, and that these ordinances were rational, legitimate exercises of the police power.

We review *de novo* the district court's grant of summary judgment, applying the same standards as the district court and viewing the record and all reasonable inferences drawn from it in the light most favorable to the non-moving party. *Erdman v. City of Fort Atkinson,* 84 F.3d 960, 961 (7th Cir.1996). We will affirm if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

On appeal, Durigan has dismissed Brookfield as an appellee and abandoned his challenge to § 15.22 of its Town Code. His principal argument is that the Sanitary District's ordinance does not bear a rational relationship to its stated objectives. He claims that the District failed to submit evidence explaining how forced connections actually prevent contamination of the water supply, or why private wells pose a "legitimate problem." Durigan argues that a better solution exists: requiring residents such as himself to periodically test their wells. Since Durigan claims to have evidence showing that no legitimate problem currently exists, he argues that a genuine issue of material fact exists for trial.

■ "Substantive due process" is a substantive limitation on the power of government to legislate, preventing legislatures from trampling on fundamental rights found elsewhere in the constitution. *Gosnell v. City of Troy,* 59 F.3d 654, 657 (7th Cir.1995); *Schroeder v. City of Chicago,* 927 F.2d 957, 961 (7th Cir.1991); *Coniston Corp. v. Village of Hoffman Estates,* 844 F.2d 461, 465 (7th Cir.1988). Land use regulations satisfy substantive due

process if they do not violate a specific constitutional guarantee and are rationally related to a legitimate governmental interest. *Pro–Eco, Inc. v. Board of Comm'rs,* 57 F.3d 505, 514 (7th Cir.1995); *Gamble v. Eau Claire County,* 5 F.3d 285, 287 (7th Cir.1993); *Magnuson v. City of Hickory Hills,* 933 F.2d 562, 567 (7th Cir.1991); *Coniston Corp.,* 844 F.2d at 467.

▮▮▮ Durigan asserts that the Sanitary District has failed to justify its ordinance. But as the challenger, he bears the burden of negating any conceivable basis that might support the rule, *National Paint & Coatings Ass'n,* 45 F.3d at 1127, and this he has not done. Protection of the public health is a sufficient reason to justify the regulation of privately-owned land. *See Pro–Eco,* 57 F.3d at 514. The Wisconsin legislature empowered local governments to require dwellings to connect to centralized water systems and to prevent cross-connections between municipal water systems and shallow, easily contaminated, and difficult-to-regulate public wells. *See* Wis. Stat. § 281.45; Wis. Admin. Code § NR 811. Recently, the Third Circuit, in a case factually identical to this one, determined that cross-connections between private wells and public supply wells pose an acute danger to the public health, safety, and welfare because private wells tend to be shallow and susceptible to contamination by naturally-occurring carcinogenic compounds, road salt, pesticides, fertilizers, spilled chemicals and petroleum products, and bacteria-laden waste from septic tanks, sewer lines, pets, farm animals, and wildlife. *See Stern v. Halligan,* 158 F.3d 729, 732 (3d Cir.1998). For this reason, the Third Circuit held that regulating the public water supply by mandating connections to centralized municipal water systems is a rational and legitimate exercise of the police power. *Id.* We agree. Providing safe water and sewer services is

a core function of government. *City of Trenton v. New Jersey,* 262 U.S. 182, 185, 43 S.Ct. 534, 67 L.Ed. 937 (1923); *Hutchinson v. City of Valdosta,* 227 U.S. 303, 308, 33 S.Ct. 290, 57 L.Ed. 520 (1913); *Stern,* 158 F.3d at 732; *Shrader v. Horton,* 471 F.Supp. 1236, 1243 (W.D.Va.1979), *aff'd* 626 F.2d 1163 (4th Cir.1980); *accord, Magnuson,* 933 F.2d at 567 (noting that municipal water and sewer systems are "fundamentally interdependent"). Requiring property owners to connect their buildings to a centralized public water supply rather than allowing a myriad of difficult-to-monitor and more easily contaminated private wells is a legitimate exercise of the police power.

Durigan attempts to distinguish *Stern* by pointing out that contaminated private wells are a significant problem in the New Jersey region where the *Stern* case arose. *See Stern,* 158 F.3d at 732 n. 4. He claims that no such problems have been documented in his community, but offers what he believes is a better, less-intrusive way to prevent them: mandatory testing of private wells. The Third Circuit, however, merely noted the local contamination problem; its analysis did not turn on it. *See id.* at 731 n. 2. But more importantly, legislatures may take prophylactic action to protect the public from perceived threats to its health, safety, or welfare, so long as the action is rational. *National Paint & Coatings Ass'n,* 45 F.3d at 1127–28. Legislatures need not choose the least restrictive means of regulation, and we will not second-guess which ever options Wisconsin and the Sanitary District determined would best achieve its goals. *See id.*

▮▮▮ Finally, Durigan asserts that the district court violated his due process rights by allowing the defendants a second opportunity to move for summary judgment. It is within the district court's dis-

cretion to deny a motion for summary judgment without prejudice to its being renewed at a later time, and may do so if good cause is shown. *See Curran v. Kwon*, 153 F.3d 481, 487 n. 11. Here, the district court denied the defendants' motion because they failed to comply with the procedural rules. The district court did not address its merits. We believe that good cause was shown and see no abuse of discretion.

Accordingly, we AFFIRM the judgment of the district court.