Sullivan
No. 99-770

RICHARD E. KENNEDY

v.

TOWN OF SUNAPEE & a.

October 9, 2001

*Law Office of Robert I. Morgan*, of Claremont, and *Law Firm of Shane R. Stewart, P.L.L.C.*, of Concord (*Robert I. Morgan* and *Shane R. Stewart* on the brief, and *Mr. Morgan* orally), for the plaintiff.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*Martin L. Gross* and *William D. Pandolph* on the brief, and *Mr. Pandolph* orally), for the defendants.

BRODERICK, J. The plaintiff, Richard E. Kennedy, appeals an order of the Superior Court (*Morrill*, J.) affirming the decision of the Town of Sunapee Water and Sewer Commission (commission) requiring him to connect to a public sewer system. We affirm.

The record supports the following facts. The Town of Sunapee (town) borders Lake Sunapee (lake), which is designated a class "A" lake by statute. RSA 485-A:8 (Supp. 2000). As such, it must be of the "highest quality" and no sewage may be discharged into it. *See id.* In the early 1970s, the town and the commission began to address the issue of proper sewage disposal management. The town believed, and an independent study confirmed, that private septic systems were potential polluters of the town's surface and subsurface waters, including the lake. In response to this health, welfare and safety concern, the town began constructing public sewer lines to protect its water resources.

In 1973, the town adopted section 2.01 of the Sunapee Sewer Ordinance (ordinance), which requires any occupied building within 300 feet of a public sewer line to be connected to it. The distance was selected to protect the lake from pollution while also keeping connection costs affordable. In its current form, the ordinance does not allow for any waiver of its requirements. Since 1869, property owners have been required by statute to connect to public sewer lines located within 100 feet of an occupied building. *See* Laws 1869, ch. 8, § 1; *State v. Kunze*, 110 N.H. 126, 127 (1970). In 1985, the statute was amended to grant municipalities the authority to increase the distance requirement. *See* RSA 147:8 (1996). By

further amendment in 1992, municipalities were permitted to grant waivers from mandatory connection, subject to certain statutory preconditions. *See id.*

Because water samples taken from the lake in the early 1990s demonstrated elevated levels of coliform and fecal coliform bacteria, the town began construction of a public sewer line for the residents of Garnet Hill Road. According to the New Hampshire Department of Environmental Services, the installation of the Garnet Hill line was intended to maintain the lake's water quality and generally assist pollution prevention efforts. The line was completed in 1995.

In 1993, the plaintiff purchased his home on Garnet Hill Road, which was served by its own septic tank and leach field. The septic system is in good condition and functions properly. The plaintiff's property, however, is located within 300 feet of the Garnett Hill line. During and after construction of the line, the commission notified the plaintiff that he had to connect to it. Because the plaintiff's septic system was in good condition, he refused to comply with the commission's directive and requested a waiver. When the town denied his request, he filed a petition for writ of certiorari in superior court arguing that RSA 147:8 and section 2.01 of the town ordinance were unconstitutional.

At trial, the plaintiff asserted that RSA 147:8 was unconstitutional because it lacked a provision allowing a property owner to seek a waiver at the State level. Referencing the legislative history of RSA 147:8, the trial court concluded that the statute's lack of such a provision was not unreasonable when balanced against the public health benefit of proper sewage disposal.

The plaintiff also argued that section 2.01 of the town's ordinance was unconstitutional, as applied. In support, he offered evidence that the town's decision to construct the Garnett Hill line was improperly influenced by a few long-time Sunapee residents and the local yacht club. The court excluded the evidence as irrelevant. It found that the plaintiff's sole loss was the replacement of his private sewer system with a public line, and, when this loss was balanced against the public benefit associated with connection to a public sewer, the ordinance was constitutional, as applied.

Lastly, the plaintiff argued that the ordinance violated his right to equal protection and its enforcement violated his "vested rights" to a preexisting nonconforming use. Finding these claims lacked merit, the court dismissed them prior to trial. This appeal followed.

## I

The issues before us are whether: (1) RSA 147:8 is unconstitutional because it lacks a provision allowing a waiver at the State level; (2) the ordinance is unconstitutional, as applied; (3) the trial court erred in excluding evidence of the town's alleged motive for constructing the Garnet Hill line; (4) the ordinance violates the plaintiff's "vested rights" in a preexisting nonconforming use; and (5) the ordinance violates the plaintiff's rights to equal protection of the laws.

We first address whether RSA 147:8 is unconstitutional because it fails to provide a procedure for property owners to seek a waiver at the State level. The plaintiff contends that the statute's 1992 amendment was adopted based upon the assumption that municipalities would enact ordinances containing waiver provisions, thereby making a waiver provision at the State level unnecessary. Because some municipalities failed to act as expected, the plaintiff concludes that the statute is unreasonable and therefore unconstitutional.

■ Part I, Article 2 of the New Hampshire Constitution guarantees all persons certain property rights and "has been held to be so specific that it necessarily limits all subsequent grants of power [that] deal adversely with it." *L. Grossman & Sons, Inc. v. Town of Gilford*, 118 N.H. 480, 482 (1978) (quotation omitted). Likewise, Part I, Article 12 grants all persons the right to enjoy their property and the right to just compensation should the State take their property. *See id.* Together, these constitutional rights limit the police power of the State and its subdivisions, and "nullify arbitrary legislation passed under the guise of that power." *Id.*

■ Our decisional law has firmly established that when the State's police power is invoked in a statutory mandate,

> such a statute will not be declared unconstitutional merely because it restricts some of the rights secured to individuals by the [constitution]. It will be declared invalid only when the restrictions thus imposed are found to be unreasonable.

*Shirley v. Commission*, 100 N.H. 299, 300 (1956). In determining the constitutional limits on the State's exercise of its police power where private rights are involved, the public benefit to be served must be weighed against those rights to determine the reasonableness of the State's action. *See id.; see also L. Grossman & Sons, Inc.*, 118 N.H. at 483. "If the restriction of a private right is oppressive, while the public welfare

is enhanced only [to a] slight degree," the offending statute is void as an invalid exercise of the police power. *L . Grossman & Sons, Inc.*, 118 N.H. at 483.

■ Our jurisprudence, and that of the United States Supreme Court, firmly establish that "'[i]t is the commonest exercise of the police power of a State or city to provide for a system of sewers and to compel property owners to connect [to them].'" *State v. Kunze*, 110 N.H. at 127 (quoting *Hutchinson v. City of Valdosta*, 227 U.S. 303, 308 (1913)). Indeed, the power to control and eliminate pollution "cannot seriously be questioned." *Shirley*, 100 N.H. at 300. In order to conclude that a statute regulating sewage is an unconstitutional exercise of the police power, it must be palpably unreasonable or arbitrary. *See Hutchinson*, 227 U.S. at 308.

■ The lack of a statutory provision allowing a property owner to seek a waiver at the State level is not arbitrary or unreasonable. The proper disposal of sewage is an interest shared by the entire community, which should not be undermined by the failure of a few to conform to legislation aimed at promoting that interest. *See Kunze*, 110 N.H. at 127; *Hutchinson*, 227 U.S. at 308. Indeed, decisions of other state courts and the United States Supreme Court have lauded the benefit of public sewage systems and found mandated connections to such systems constitutionally acceptable. *See Hutchinson*, 227 U.S. at 308; *District of Columbia v. Brooke*, 214 U.S. 138, 148 (1909); *Township of Bedford v. Bates*, 233 N.W.2d 706, 708 (1975) ("An examination of other state court decisions reveals that mandatory connection with public sewers has been readily upheld against constitutional attack.").

Further, the 1992 amendment to RSA 147:8 actually *lessened* the restriction imposed upon private rights by granting municipalities conditional discretion to allow for connection waivers. Where, before, a lot owner was compelled to connect without any recourse, after the 1992 amendment the owner could, at a town's discretion, pursue a waiver. We fail to see how lessening the restriction on private rights somehow renders the statute unreasonable. The statute was constitutional prior to the 1992 amendment and, we find, the amendment changes nothing in this regard.

We also disagree with the plaintiff's assertion that the 1992 amendment was enacted on the erroneous belief that all municipalities would enact waiver provisions. The amendment initially called for automatic waiver at the State level if certain conditions were met. Because of a concern that individuals would install private septic systems and receive an automatic waiver at the State level, however, the legislature opted for local control over granting waivers. According to the legislative history, an automatic

State waiver provision would have undermined the ability of municipalities to create public systems for sewage disposal, rendering such systems economically unsound. Thus, contrary to the plaintiff's assertion, the amendment apparently was adopted for a number of reasons and not solely upon the assumption that municipalities would enact waiver provisions.

## II

We now turn to the plaintiff's contention that section 2.01 of the ordinance was unconstitutional, as applied in this case. An ordinance that promotes the public health and welfare is unconstitutional if its application to a property owner is arbitrary or unreasonable. *See Metzger v. Town of Brentwood,* 117 N.H. 497, 501 (1977). The injury or loss to the landowner must be weighed against the gain to the public good in order to determine whether an ordinance is arbitrary or unreasonable. *See id.* "When the restriction as applied to a particular piece of land is unnecessary to accomplish a legitimate public purpose or the gain to the public is slight but the harm to the citizen and his property is great," the restriction becomes arbitrary or unreasonable, as applied. *Id.* at 503.

In response to a study in the early 1970s, which concluded that private septic systems posed significant problems to Lake Sunapee's water quality, the town enacted the ordinance at issue and began constructing a public sewer system. The trial court concluded that the benefit of the ordinance "is the protection of the public health by safeguarding the water quality of [Lake Sunapee]." Given the overall health benefit a public sewage system provides to a municipality, we will not interfere with a municipality's power to construct a sewer system and compel landowners to connect to it absent a palpable showing that the restriction is arbitrary and unreasonable. *See Hutchinson,* 227 U.S. at 308.

█ The sole injury or loss to the plaintiff is the replacement of a private septic system in good condition with connection to the Garnett Hill line. Although evidence of the plaintiff's potential costs to connect to the line was presented to the trial court, the plaintiff conceded that it was insignificant in assessing his injury or loss. When balanced against the public benefit of protecting the lake's water quality and the proper disposal of sewage, the harm to this plaintiff and his property is not enough to render the ordinance unconstitutional as applied. A contrary result would negatively affect the proper functioning of the Garnett Hill line and, more broadly, undermine future efforts of any community to control sewage disposal by constructing public lines and mandating connection to them. The trial court correctly concluded that the public

benefit outweighed the private restriction upon the plaintiff and his property. The application of the ordinance to the plaintiff was not arbitrary or unreasonable.

## III

Next, we address the plaintiff's argument that the trial court erred in excluding evidence underlying the town's decision to construct a public sewer line on Garnett Hill. The plaintiff contends that the Garnett Hill line was constructed to benefit the private interests of a few residents, not to promote the protection of the lake's water quality. The motives behind a town's decision are appropriately debated during the legislative process.

They are irrelevant, however, in determining whether an ordinance is constitutional, as applied. "We cannot undertake a search for motive in testing constitutionality." *Daniel v. Family Ins. Co.*, 336 U.S. 220, 224 (1949). The trial court did not abuse its discretion in excluding the evidence.

## IV

A review of the record indicates that the plaintiff waived his claim of an equal protection violation before the superior court and, thus, we will not consider it. *See Snow v. American Morgan Horse Assoc.*, 141 N.H. 467, 472 (1996). The plaintiff's remaining arguments are without merit and warrant no further discussion. *Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.