376 So.2d 191 (1979)
Lyndell LEPRE
v.
D'IBERVILLE WATER AND SEWER DISTRICT.
No. 51451.
Supreme Court of Mississippi.
September 26, 1979.
Rehearing Denied November 14, 1979.
Thomas J. Wiltz, Biloxi, for appellant.
Boyce Holleman, Ben F. Galloway, III, Gulfport, for appellee.
Before ROBERTSON, BROOM and COFER, JJ.
ROBERTSON, Presiding Justice, for the Court:
Appellant, Lyndell Lepre, has appealed from an Order of the Chancery Court of the Second Judicial District of Harrison County, mandatorily enjoining him to connect with water lines of appellee, D'Iberville Water and Sewer District, and also ordering him to pay back service charges totaling $181.23 (which accrued at the rate of $7.50 per month).
Chancellor Mike Carr, of the Fifteenth Chancery Court District, sat as a special chancellor to hear this case. He rendered the following excellent opinion, which is adopted as the opinion of this Court in this case:
*192 From the evidence before the Court, it appears that in order to fulfill its need for both water and sewer facilities, the community of D'Iberville created a water and sewer district in November of 1969. The establishment of such a water and sewer district was undertaken pursuant to the statutory procedure provided for in Chapter 50, enacted by an Extraordinary Session of the Mississippi Legislature in 1964. The following steps are reflected in the Minutes of the D'Iberville Water and Sewer District: in July, 1969, a petition was submitted to the Harrison County Board of Supervisors outlining the proposed boundaries and estimated cost of the District; at the same time, resolutions were passed calling for a public meeting, setting the time of the meeting and preparing a notice of said meeting for the general public; in October, 1969, following the public meeting, a resolution was passed stating that public convenience and necessity required such a water and sewer system, but such a system would not be created if 20% of the qualified voters of the proposed district filed a petition against the creation of such a district; public notice was given as to the above resolution, so that the public could discuss the resolution and consider the necessity for the creation of such a District. Sufficient statutory notice was given to all residents that such a District was being promulgated, and ample time for protest was allowed. Those persons who had their own wells had sufficient remedies to attempt to enjoin the proceedings, if they were so inclined, and they had ample opportunity to voice their opinions and objections by exercising the strongest power they had  their own vote. They raised no legal objections. No petition was filed protesting the creation of the District and as shown in the official Minutes of the Board of Supervisors in November, 1969, the D'Iberville Water and Sewer District was formally created, and a Board of Commissioners was duly appointed. It appears to this Court that the Board of Supervisors followed an orderly path of organization for this District, and that all of the prerequisites for its design and intention as set forth in the Legislative enactment were strictly adhered to.
After being duly organized, the District undertook to provide a means for financing its operation, and in so doing took the following steps: a resolution was proposed for the issuance of $1,720,000.00 in revenue bonds, such bonds to be retired solely from the service charge by the D'Iberville Water and Sewer District. Notice of the issuance of these bonds was published, so that all qualified electors could have the opportunity of voting for or against same in an election to ascertain whether or not a majority of the voters approved the issuance of the bonds. The result of the election was 304 qualified voters for the issuance of the bonds and 241 qualified electors against. A majority of the qualified electors having voted for the bond issue, the Board of Supervisors entered an order on its minutes declaring the results of the election in favor of issuing bonds to finance the D'Iberville Water and Sewer District.
Complainant determined that it was necessary to provide first a functional water system, and that sewerage could then adequately be provided at a later date. A resolution issuing water bonds in the amount of $1,575,000.00 was passed, without protest. Subsequently, Section 5, Chapter 50, was amended and appears as Section 1, Chapter 890, Local and Private Laws of 1973. This section was again amended in 1977 and appears as Chapter 962, Local and Private Laws of 1977. As shown by its Minutes, in October, 1974, the D'Iberville Water and Sewer District discussed the conditions for financing set forth in the letter it received from the Farmers Home Administration, and a resolution was adopted, which included the terms and conditions set forth in said letter, and one of those conditions was that there would be a minimum of 1,050 water users, and that all residences and businesses situated in the water system would connect to the system. Evidently, complainant had sensed the necessity for having all persons connect on to the system earlier, because on September 20, 1973, it passed a resolution making mandatory the connection of all water and sewer outlets *193 located within the District, when the system was ready for connections. In January, 1976, the Board of Commissioners of said District passed an ordinance making it mandatory that all residences and businesses within the District connect onto the system. Said Board of Commissioners further determined that all persons would be liable for the minimum rate charge of $7.50 per month, whether they were connected up or not. This action is reflected in the Board's official Minutes. Notice was sent to the Defendant that he would be charged the $7.50 per month minimum rate, whether he connected up or not. The Defendant failed, refused and neglected to connect up and at the time of the filing of this suit, Complainant alleges that the Defendant owed an aggregate amount of $181.23 to the Complainant.
The questions for determination by this Court are whether or not it can by mandatory injunction compel the Defendant to connect up to the water system, and whether or not the Defendant is liable for the $181.23 aggregate monthly service charges, even though he has never connected onto or used the water system.
Whether or not an ordinance [January, 1976] or resolution [September 20, 1973], mandatorily requiring all residences and businesses to connect with the system can be enforced against a Defendant does not appear to have been decided by the Supreme Court of Mississippi.
It appears to me that the overriding consideration here is whether or not the police power of a state and/or its duly legislated creatures and creations allows this type of water regulation. I think that it does. To deny that Harrison County was in need of legislation enabling it to form districts to protect its inhabitants and provide water is to deny recognition that counties have individual needs and problems peculiar to their people, which would, of course, extinguish the need for local and private laws. The goals to be achieved by enactments such as the statutes and ordinance involved, which compel property owners to connect, are to protect the health of persons residing within congested areas and in order to assure the payment of bonds issued for such purposes. These are legitimate goals, worthy to be protected by and promoted under the police power of a state or any of its duly authorized or legislatively enacted subdivisions. In Hutchinson v. Valdosta, 227 U.S. 303, 33 S.Ct. 290, 57 L.Ed. 520, the United States Supreme Court held in a case where the appellant protested a city ordinance requiring persons and property owners to install water closets, connect them with main sewer lines, and then provide the closets with water that:
"It is the commonest exercise of the police power of a state or city to provide for a system of sewers, and to compel property owners to connect therewith."
The Defendant argues in this case that he should not be compelled to connect to the water system, because he has a well of his own and, therefore, has no need to connect. In Sanitation District No. 1 of Jefferson County v. Campbell, 249 S.W.2d 767 (Ky. 1952), property owners with septic tanks refused to connect with a publicly maintained sewage system. In compelling connection, the court stated:
"The Community is to be considered as a whole in the matter of preservation of the health of all inhabitants, for a failure by a few to conform to sanitary measures may inflict ill health and death upon many ... Their action [governing boards] cannot be regarded as unconstitutionally arbitrary, or the taking of property without due process of law... [A]lthough privately operated septic tanks may afford a sanitary disposal system, the publicly maintained sewage system is better at doing away with both potential and actual health menaces."
The Defendant also has raised the question of the constitutionality of such legislation and ordinance, which requires mandatory connection, and its enforceability. When faced with the same contention over a similar ordinance, the Louisiana Supreme Court upheld compulsory connection and stated, in Fristoe v. City of Crowley, 142 La. 393, 76 So. 812 (1917):

*194 "There is no force in the contention that it required express constitutional authority for the Legislature to enact a law empowering municipal corporations to require property owners to connect their premises with the public sewerage system at the expense of each property owner. It suffices that the Constitution does not prohibit such legislation."
From this holding and from what this Court deems a very reasonable view, it would have to be proved that this police power had been manifestly transcended or abused, before the Court could set aside or declare void this ordinance and this legislation which was intended to promote the public health. This Court feels that the matter of compelling property owners to connect to water lines is clearly within the authority of the rule-making body. See Spear v. Ward, 199 Ala. 105, 74 So. 27, 29 (1917).
Defendant's contention that the resolution creating the District failed to vest any powers in the D'Iberville Water and Sewer District is without basis. While it would generally be held true that a water district may exercise only such powers as are expressly delegated to it by the Legislature, nevertheless, the D'Iberville Water and Sewer District had the following powers expressly delegated to it: the power to "acquire, construct, reconstruct, improve, better, extend, consolidate, maintain, and operate such [a] system" and the power in the District's Board of Commissioners to "secure the general health ... prevent, remove, and abate nuisances, and to require mandatory connection of all residences and businesses on lines of water systems of the district." (Chapter 50, First Extraordinary Session of Legislature, 1964, and Section 5, Chapter 962, Local and Private Laws of 1977). It was under this legislation that this District was initially created; all resolutions were passed pursuant to the mandate of the above law, and the authority vested in the District arises from this law.
Defendant also contends that the imposition of charges on him as a non-user amounts to a tax. While it may be argued that this charge takes on many of the aspects of a tax, it is not a tax according to the holding of our Supreme Court. In Huston v. Mayo, 120 Miss. 523, 82 So. 334 (1919), our Supreme Court stated:
"[T]he money to be collected from the landowners in a drainage district created under a statute like the one here in question for the purpose of paying the expense of creating and maintaining the district is a local assessment and not a tax within the meaning of our Constitution and statutes."
The Defendant claims no liability for the monthly minimum service charges made against him, which totaled $181.23. However, the Defendant has benefits by the installation of the water system, as do all the other residents of D'Iberville. By passing legislation empowering the District to construct such a system, incurring a large debt to finance the system, and subjecting all of these decisions to the vote of the general population of D'Iberville, it would now be a gross inequity to allow the District to face financial disaster, because of the failure of some of the people to abide by an ordinance that was intended to be and was passed for the benefit of all the residents of the District. The benefit was not limited to just those persons who connected onto the system, and the charge for paying for the system should not be so limited. Every owner of property in D'Iberville was interested in and affected by the establishment of a good water and sewer system for sanitary purposes throughout the community, and a distinct benefit accrued to every property owner. The service rendered to the Defendant in this case was the construction and availability of the water system. Such a service made the Defendant impliedly indebted, either through himself or his property.
Finally, the Defendant contends that there is no factual or legal basis for the issuance of a mandatory injunction against the Defendant. This Court feels that there is such a basis, both as to fact and as to law. The failure of the Defendant to connect to the water lines of the system has the resulting *195 effect of substantially injuring the Complainant; directly, by continuously violating the laws, resolutions, and ordinances hereinabove referred to and ignoring the health and welfare of the community by using unregulated water supplies; indirectly, by undermining the financing of such a system by refusing to pay the costs of the system which will go toward liquidating the indebtedness financed by the Farmers Home Administration. The Court feels that such injuries are substantial, that there is reasonable probability that they will continue, and that there is no adequate remedy at law. The right to an injunction springs from just such a situation. Griffith's Mississippi Chancery Practice (2nd Ed. 1950), Sec. 436, pp. 432-33.
This Court feels that the continued existence of the D'Iberville Water and Sewer District must ride or fall upon the decision in this case. In order for it to survive as a beneficial service system to all the residents of the D'Iberville community, there must be compliance with the resolution and ordinance passed by its Board of Commissioners, requiring mandatory connection with the lines of the system.
For the reasons hereinabove stated, the relief sought by the Complainant in its Bill of Complaint is hereby granted to the extent that the Defendant is mandatorily enjoined to connect onto the lines of the Complainant's water system and is ordered and directed to pay the sum of $181.23 as the aggregate minimum monthly service charge made to him. Complainant's prayer for attorney's fee is denied, and all costs of court are taxed against the Defendant.
The decree of the trial court based on the foregoing opinion is, therefore, affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.