799 So.2d 142 (2001)
Leonard E. WOLFE, Appellant,
v.
The CITY OF D'IBERVILLE, A Municipal Corporation, Appellee.
No. 2000-CP-01295-COA.
Court of Appeals of Mississippi.
October 16, 2001.
*143 Leonard Wolfe, Appellant, Pro Se.
Virginia L. Carothers Lococo, Diberville, Attorney for Appellee.
Before KING, P.J., BRIDGES, and IRVING, JJ.
BRIDGES, J., for the Court:
¶ 1. The original action that began this case was filed in 1996, when the D'Iberville Water and Sewer District (the District) sued Wolfe for payment of past due service charges which Wolfe claims he never owed. The justice court judge hearing the case ruled in favor of Wolfe and the District subsequently appealed that decision to the County Court of the Second Judicial District of Harrison County, Mississippi.
¶ 2. On March 7, 1997, a motion was filed to revive the case under the name of "City of D'Iberville," which had taken over the duties of the District by that time. An order was filed by the judge on March 11, 1997, and the case was revived. Following this occurrence, the City then filed a motion to voluntarily dismiss its case against Wolfe on May 29, 1997. The order for the dismissal was filed by the judge on June 2, 1997.
¶ 3. On the same day, Wolfe filed suit against the City in county court alleging that the City failed to connect his properties to the water and sewer lines and that he suffered extensive losses due to this failure. Shortly thereafter, Wolfe voluntarily dismissed his action because he failed to file a notice of claim as required by law. See Miss.Code Ann. § 11-46-11(1) (Supp.2000). Wolfe later filed a proper notice of claim, alerting the City that he intended to file suit against it. Wolfe went on to file his complaint against the City in the county court on January 22, 1999, arguing that the City wrongfully failed to connect his properties to the water and sewer lines due to his failure to pay certain fees which he claims he does *144 not owe. He asserts that he lost thousands of dollars in rent money and also incurred other financial losses. Additionally, Wolfe contends that he has undergone serious emotional distress because of his ongoing battle with the City.
¶ 4. The City filed a motion to dismiss, or in the alternative, for summary judgment, which was heard by the county court on May 7, 1999. In an order filed on July 29, 1999, the county court granted summary judgment to the City and dismissed Wolfe's cause of action against the City with prejudice. On August 24, 1999, Wolfe filed an appeal to the Circuit Court of the Second Judicial District of Harrison County. The circuit court adopted the findings of fact and conclusions of law set forth by the county court in its final judgment and affirmed the county court's decision to grant summary judgment in favor of the City, citing that it found no genuine issue of material fact to be disputed by the parties.
¶ 5. As well, the circuit court ruled that Wolfe's notice of appeal was untimely and thereby statutorily barred. Wolfe now appeals to this Court for relief claiming that summary judgment should not have been granted to the City and that he should be heard in court in a trial of this matter. He also asserts that he filed his appeal before the circuit court in a timely manner according to Rule 5.04 of the Uniform Rules of Circuit and County Court Practice.

FACTS
¶ 6. In January 1996, the D'Iberville Water and Sewer District enacted a municipal ordinance which required that all businesses and residences within the perimeters prescribed pay a minimum monthly payment to cover a debt service charge for the water and sewer lines being provided. The ordinance states that all residences and businesses within the set boundaries would be held liable for the fee, no matter whether they were connected to the water and sewer lines or not. In our instant case, however, Wolfe complains that he should never have been required to pay this service charge on his business, located on Gorenflo Road in D'Iberville, because it was not connected to the system and therefore, he was not a "user" as set out by the ordinance. Wolfe goes on to assert that he had an oral agreement with an employee of the District that he would not have to pay for this charge. However, there is nothing in the record to corroborate this declaration.
¶ 7. Wolfe did begin to pay water and sewer debt service charges for his property on Gorenflo Road in July 1988, but continually refused to pay the past due portion of these service charges that had accrued beginning in September 1986. The District's records show that, at the time that Wolfe started paying the monthly charges, the District applied those payments to his past due balance first. However, Wolfe never brought his account current by paying the complete balance, citing that he did not owe those charges before July 1988. Therefore, the District refused to connect Wolfe's business to the water and sewer lines until his account balance was settled.
¶ 8. Wolfe also has a dispute with the District regarding a separate piece of rental property on Racetrack Road in D'Iberville. Wolfe had paid a deposit and tap fee for that property in November 1993, and was to call the District when he wanted the installation of the taps performed. Upon his request that the taps finally be installed in August 1994, the District was forced to charge him the current prices for the materials and labor which were higher than when he paid his original deposit the year before. Wolfe refused to pay the overage, citing that he never received an *145 itemized list detailing exactly what the extra charges were for as he had requested. After this dispute, the current chairman of the District reached an agreement with Wolfe whereby his tap fees were reduced and Wolfe then paid those fees. Wolfe, however, is asserting that he suffered lost rents on the Racetrack Road property for the period of time in which he refused to pay what he claims were unsubstantiated charges.
¶ 9. Wolfe feels aggrieved that his properties were without the benefit of access to water and sewer lines set up by the District for a long period of time and therefore seeks relief in the form of money damages for lost rents and emotional suffering. Wolfe challenges that his appeal to the circuit court from county court was filed in a timely manner because he filed it within the thirty days required by Rule 5.04 of the URCCC. Wolfe contends that this rule supersedes Miss.Code Ann. § 11-51-79 (1972), which gives a complainant only ten days from the county court judgment to file a proper notice of appeal.
¶ 10. Wolfe cites absolutely no legal authority in support of any of his arguments against the City, which took over the duties of the District after its dissolution. On the other hand, the City cites various case law as framework for its claims and defenses, some relevant to our review, some not.

STANDARD OF REVIEW
¶ 11. This Court will conduct a de novo review on all cases before it where summary judgment has been granted. Gale v. Thomas, 759 So.2d 1150, 1152 (Miss.1999); Quinn v. Mississippi State University, 720 So.2d 843, 846 (Miss.1998). We review the evidence in the light most favorable to the non-moving party. Gale, 759 So.2d at 1152; Palmer v. Biloxi Reg'l Med. Ctr., Inc., 564 So.2d 1346, 1354 (Miss.1990). "If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision should be affirmed." Gale, 759 So.2d at 1152 (quoting Brown v. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss.1983)).
¶ 12. When one party swears to one version of the facts in issue and the other party says the opposite, therein lies a scenario which would require the denial of summary judgment to the moving party. Quinn, 720 So.2d at 846. The burden of proving that there exists no genuine issue of fact in the matter is on the party moving for summary judgment. Id.; McCullough v. Cook, 679 So.2d 627, 630 (Miss. 1996); Mantachie Natural Gas Dist. v. Mississippi Valley Gas Co., 594 So.2d 1170, 1172 (Miss.1992).

LEGAL ANALYSIS
¶ 13. To begin, we note that this Court is not obligated to review this case on any level because Wolfe has submitted no case law or other authority to support his claims. Ratcliff v. State, 752 So.2d 435 (¶ 7) (Miss.Ct.App.1999); Harveston v. State, 742 So.2d 1163 (¶ 20) (Miss.Ct.App. 1999); Hewlett v. State, 607 So.2d 1097, 1107 (Miss.1992). See also Dozier v. State, 247 Miss. 850, 157 So.2d 798, 799 (1963). Wolfe provides us with nothing but his own bald assertions that he was wronged by the City and his own shaky interpretations of and opinions on Mississippi's rules of procedure and statutory law. The Mississippi Supreme Court has ruled that "where a party fails to cite case law in support of his argument, we are not bound to address his assertions of error." Ratcliff, 752 So.2d at (¶ 7) (citing Hewlett, 607 So.2d at 1107).
¶ 14. In his brief before this Court, Wolfe replaces the page where his list of authorities should be with a paragraph indicating that, despite his efforts, he could *146 find no law on which to base his claims. This is not acceptable. There is ample law that has been published for many years on the subjects of summary judgment, statutes of limitation, sovereign immunity, breach of contract, etc., which Wolfe could have used to better formulate his arguments. Obviously, it is not up to this Court to do Wolfe's research for him. Because he cites no authority, we are not under any obligation to review his complaints on appeal from the county and circuit court decisions. Ratcliff, 752 So.2d at (¶ 7).
¶ 15. Notwithstanding Wolfe's failure to properly prepare his appeal before this Court, thereby creating a procedural bar to his claims, we have elected to discuss some issues which we feel are relevant to our finding that Wolfe's assertions contain no merit. Before we do so, however, we would like to note our disagreement with the lower court's decision regarding Wolfe's deadline on his appeal from county court to circuit court. We find that Wolfe is correct in asserting that his appeal was timely filed, but not necessarily for the precise reasons that Wolfe argues.
¶ 16. Rule 5.04 of the Uniform Rules of Circuit and County Court Practice sets forth a requirement that all appeals from county court be filed no later than thirty days after the final judgment of the court. On the other hand, Miss.Code Ann. § 11-51-79 (1972) gives a complainant only ten days from the county court's final judgment in which to file a notice of appeal along with an appeal bond. To solve this matter, we look to a very recent decision by the Mississippi Supreme Court in which it was decided that "[w]hile our own rulemaking power takes precedence, we note that, with the passage of H.B. No. 1207 during its 2001 regular session, the Legislature amended § 11-51-79 to replace the ten-day appeal period with the thirty-day appeal period, effective July 1, 2001." Davis v. Nationwide Recovery Service, Inc., 2000-CP-00036 SCT (¶ 4), 797 So.2d 929 (Miss.2001).
¶ 17. Therefore, the question of whether Rule 5.04 of the URCCC supersedes the deadline in Miss.Code Ann. § 11-51-79 (1972) has now been explicitly answered. In Davis, the court applied this new and unambiguous rule to a notice of appeal which was filed in 1999, the same year as the notice of appeal in our instant case. Id. at (¶ 4). Being apprised of this new ruling, we are convinced that Wolfe's appeal was timely requested. However, this cannot cure the fact that Wolfe has not conquered the issue of summary judgment in this case. He has not effectively rebutted the City's case which, we are convinced, has proven that it was entitled to summary judgment. As such, an indepth discussion on questions of law, such as limitations and sovereign immunity would be a waste of this Court's time.
¶ 18. We are concerned only with reviewing the lower court's decision in this case that there is no genuine issue of material fact to be disputed here. Both parties admit that, due to Wolfe's unpaid balance on the debt service charges billed to him, the City refused to connect his property to water and sewer lines. While the major dispute between the parties is whether the City wrongfully denied this service to Wolfe, that question has been answered by the municipal ordinance found in the record of this case and detailed in the case of Lepre v. D'Iberville Water and Sewer District, 376 So.2d 191, 193 (Miss.1979).
¶ 19. If there were any questions in our minds about the ordinance at issue here due to ambiguities in the record, those questions were quickly satisfied upon reading the Mississippi Supreme Court's evaluation *147 of this exact ordinance in the Lepre case. Id. The D'Iberville ordinance regarding water and sewer access among residents and business owners, mandates that "all persons [are] liable for the minimum rate charge ... whether they were connected up or not." Id. It was shown that the citizens of D'Iberville voted on this ordinance and it passed. Id. Further, the court went on to hold that compelling these property owners to connect to the water and sewer lines and requiring them to pay the service charge, whether connected or not, was "clearly within the authority of the rule-making body." Id. at 194.
¶ 20. The reason for allowing this demand for payment of service charges by the District (now, the City), is to "protect the health of persons residing within congested areas and in order to assure the payment of bonds issued for such purposes." Id. at 193. The benefit is incurred by every property owner, whether or not they are utilizing the system. Id. at 194. "The benefit was not limited to just those persons who connected onto the system, and the charge for paying for the system should not be so limited." Id.
¶ 21. Because the Mississippi Supreme Court has declared that this ordinance governing the water and sewer district/the City of D'Iberville is appropriate and in line with the powers of the municipality, we cannot find any merit in Wolfe's claims that he was not a "user" and therefore should never have been assessed those charges and denied access to the water and sewer lines. Id. at 193-94. Because the dispute as to whether Wolfe was rightfully compelled to pay the fees before he could gain access to the water and sewer lines has been resolved by the approval of the City's ordinance by Mississippi's highest court, there is nothing left for Wolfe to argue and no remaining facts in dispute that are material to this case. Every other claim set forth in Wolfe's brief revolves around this one and only disagreement of an already settled fact. Therefore, all assertions on questions of law, such as whether sovereign immunity applies, whether Wolfe's claims are timebarred, and the like, are moot and need not take up this Court's time, despite the fact that the City has gone to great lengths to make arguments on those points of law, albeit in the form of a verbatim version of the county court's conclusions of law with little original arguments of its own.
¶ 22. Taking into consideration every document in the record of this case, including all pleadings, discovery, affidavits, depositions, etc., we are convinced that the City has met its burden here. The City has put forth solid evidence to support its assertions and we again note that Wolfe, on the other hand, has cited zero authority which this Court could use to favorably consider his arguments in rebuttal of the City's case. There is simply no proof that any damages are owed to Wolfe by the City because the City wrongfully refused service to Wolfe. Wolfe offers nothing to dispute the City's assertions that he was denied service because he simply did not follow the ordinance. This Court cannot find for Wolfe just because he does not like the D'Iberville ordinance or because he thinks it is not fair. Therefore, the City is entitled to judgment as a matter of law and the decision of the lower court should be upheld.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT OF HARRISON COUNTY IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
*148 KING, P.J., THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., LEE AND CHANDLER, JJ.
SOUTHWICK, P.J., CONCURRING:
¶ 24. I agree with the result reached by the majority. One of the authorities relied upon to explain the result, though, is a recent Mississippi Supreme Court opinion regarding the time for taking appeals from county courts. This recent opinion could be interpreted to create rather substantial changes in the law, but I believe that as properly limited it provided a useful result.
¶ 25. Among the issues in our present appeal is the conflict between a statute that provides a ten-day deadline for taking appeals from county court and a uniform court rule that grants thirty days. Cf. Miss.Code Ann. § 11-51-79 (1972) (10 days) with URCCC 5.04 (30 days).
¶ 26. Since an epochal 1975 decision, the Supreme Court has concluded that rules affecting judicial procedures are within the inherent authority of the judiciary to make. Newell v. State, 308 So.2d 71, 76 (Miss.1975). Rules of Civil Procedure were adopted under this authority in 1981, Rules of Evidence in 1985, and other rules since then. F. Keith Ball, Comment, The Limits of the Mississippi Supreme Court's Rule-Making Authority, 60 Miss. L.J. 359, 363-64 (1990).
¶ 27. The majority relies upon a recent opinion that held this:
We note that when the URCCC were adopted, the thirty-day period was used in the interest of promoting uniformity between our rules and the federal appellate rules which allow thirty days. With the adoption of the Rules of Civil Procedure and the Court's pronouncements in Hall v. State, 539 So.2d 1338, 1345 (Miss.1989), and Newell v. State, 308 So.2d 71, 76 (Miss.1975), we articulated its power to establish rules regarding appeals from court to court, and its mandate that such rules supercede statutes which are in conflict with the rules. Accord, Van Meter v. Alford, 774 So.2d 430, 432 (Miss.2000); American Investors, Inc. v. King, 733 So.2d 830, 832 (Miss.1999).
Davis v. Nationwide Recovery Serv., Inc., 797 So.2d 929 (¶ 4) (Miss.2001).
¶ 28. After decreeing that its rulemaking power trumped the statute, the Court noted that a change to the statute had recently been passed that made it consistent with the rule, though it would not have been effective on Davis's appeal. Id. That statutory change does not apply here, either.
¶ 29. Ever since Newell and prior to Davis, the Supreme Court had attempted to maintain a distinction between purely procedural matters that were within the Court's authority and other kinds of rules that were not. For example, there has been no abandonment of the principle that whether a right of appeal exists is solely a matter of statute. Gill v. Mississippi Dep't of Wildlife Conservation, 574 So.2d 586, 590 (Miss.1990). Another opinion stated that an "appeal is a matter of statutory right and not based on any inherent common law or constitutional right." Fleming v. State, 553 So.2d 505, 506 (Miss. 1989), citing Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312-3313, 77 L.Ed.2d 987 (1983). Even more directly applicable here, the Court after Newell has held statutes setting a "time within which appeals shall be taken are both mandatory and jurisdictional, and must be strictly complied with. The court is without power to ingraft any exception on the statute." *149 Moore v. Sanders, 569 So.2d 1148, 1150 (Miss.1990), citing Dependents of Townsend v. Dyer Woodturnings, 459 So.2d 300, 302 (Miss.1984).
¶ 30. Despite these decisions, the legislature decided in 1991 to permit the Supreme Court to set the time within which most appeals had to be taken, as the statute requiring appeals from circuit or chancery court to be taken within 30 days was repealed. Miss.Code Ann. § 11-51-5 (1972), repealed 1991 Miss. Laws ch. 573, § 141. I believe that under proper understanding of the constitutional divide between legislative and judicial powers, as defined just the previous year in Moore v. Sanders, there was no defect in the legislature's imposing appeal time limits by statute. Indeed, the legislature continued to assert authority over appeals from county courts in the statute later struck down in Davis. Nonetheless, a branch of government could be commended for not insisting on exercising its full range of power. Indeed the Supreme Court reciprocates when it attempts to accommodate the legislature by considering statutory procedural rules in a "cooperative spirit" in an effort to provide for the "fair and efficient administration of justice...." Newell, 308 So.2d at 78. The legislature has retained the central statute creating the right to appeal, which is granted to either party after a final judgment in circuit or chancery court in a civil case. Miss Code Ann. § 11-51-3 (Supp.2000). That statute is indispensable since the right to appeal is solely a matter of statute. For now.
¶ 31. When different branches of government have powers that affect the same subject matter, there will inevitably be areas of potential overlap or conflict. The boundaries have been minimally defined in the precedents. In Newell, the Court found that it had "inherent power ....to promulgate procedural rules...." Newell, 308 So.2d at 76. In Hall, which the Supreme Court in Davis cited, the Court found that it had the inherent authority to promulgate rules of "practice and procedure," which include rules of evidence. Hall, 539 So.2d at 1345. The legislature has defined its understanding of the boundaries between legislative and judicial power this way:
As a part of the judicial power granted in Article 6, Section 144, of the Mississippi Constitution of 1890, the Supreme Court has the power to prescribe from time to time by general rules the forms of process, writs, pleadings, motions, rules of evidence and the practice and procedure for trials and appeals in the Court of Appeals and in the circuit, chancery and county courts of this state and for appeals to the Supreme Court from interlocutory or final orders of trial courts and administrative boards and agencies, and certiorari from the Court of Appeals.
Miss.Code Ann. § 9-3-61 (Supp.2000). The Supreme Court cited this statute in Hall without questioning its accuracy. Hall, 539 So.2d at 1346 n. 16.
¶ 32. The holding in Davis could be that the time within which to appeal is a matter of procedure for the Supreme Court to decide, thereby overruling such cases as Moore v. Sanders. If so, then if the legislature decided to extend the time within which appeals from circuit or chancery courts should be taken to 45 days, or shorten it to 20 days, that would be unconstitutional under Davis. Just how revolutionary that would be can help decide whether the Davis opinion should be interpreted that way or more narrowly. I will analyze why the time within which to appeal has been considered within the ambit of proper legislative action and not mere court procedure.
*150 ¶ 33. No Mississippi precedent that I have found gives extensive commentary on what is practice and procedure and what is beyond those categories. There is a sense that if the regulation is of conduct occurring within a court, from the time the matter was properly commenced in that court until it is disposed of by the court, it is likely to be a matter of practice and procedure. These are core functions in the day-to-day operations of courts and properly within their control under Newell. Whether the matter was timely commenced in that court is not internal practice and procedure, but instead it is something that can be, and indeed always has been, controlled by the legislature through statutes of limitations. Similarly, whether there is a right to move beyond the initial court to a higher level, i.e., whether there is a right to appeal, has traditionally been held to be a matter solely of legislative discretion. Gill, 574 So.2d at 590; Fleming, 553 So.2d at 506.
¶ 34. The most thorough review of this matter that I have discovered under Mississippi practice is found in the review of the judiciary's prerogatives in this area that appeared in a law journal a few years before Newell:
The division [between matters properly within the control of the legislature and those for the courts] is dependent upon whether the matters involve primarily questions of important public policy, in which case they are properly of legislative concern, or whether they relate primarily to the effective and orderly administration of justicethe dispatch of the business of the courtsin which case they are properly the subject of the judicial rule-making power. Questions relating to the creation of courts, their organization, the salaries of their officials, and the subjects over which they can exercise jurisdiction are all matters involving important policy considerations and should be under the control of the legislative branch. Similarly, the length of the period of limitations in various cases primarily involves policy considerations, rather than the orderly dispatch of the judicial business, and is therefore subject to legislative action.
Lawrence J. Franck, Practice and Procedure in Mississippi: An Ancient Recipe for Modern Reform, XLIII Miss. L.J. 287, 303-304 (1972). On the other hand, "the form, content and manner of service of process should be matters of judicial, not legislative concern, since they go solely to the orderly administration of the judicial business." Id. at 304.
¶ 35. A republican form of government as required under Article 4, Section 4 of the United States Constitution for each state has not usually been considered to require three separate, watertight compartments comprising the judicial, legislative, and executive powers. Instead, the very concept of checks and balances reveals that each branch has some interplay with the other branches. The Mississippi Supreme Court has recognized that principle when it properly wrested from the legislature only the power to adopt rules of practice and procedure and did not attempt to arrogate all powers over matters that touch or concern the judicial system.
¶ 36. Unless the Mississippi Supreme Court is going to create a constitutional right to appeal in every case, something that it has rejected in such cases as Gill, or unless it is going to hold that even though there is not an absolute right to appeal it is still for the courts to decide who receives the right, then the policy decision on whether in a particular kind of action there is to be a right to appeal and the time within which to exercise any right given, should be treated just as the equivalent rights of timely initiation of suit. *151 Whether a person has timely presented a claim in court is controlled by legislatively-drafted rules called statutes of limitation. Whether and for how long a party has the right to move beyond the initial court and appeal to another court has also as recently as the 1990 Moore v. Sanders decision been recognized as a legislative matter. I do not believe that the judiciary has the right to decide even after the most careful deliberation that the proper time after judgment for all appeals is a day, or a year. Such indisputably policy decisions, unrelated to the internal operation of either the trial or the appellate court, are for the legislature.
¶ 37. One way in which Davis could be interpreted narrowly is to focus on the fact that the only remaining statute setting a time deadline for appeals applied solely to appeals from county court and was inconsistent with the rule-based deadlines for other appeals. The efficient management of courts and fair treatment of parties may justify this minimal imposition of consistency in order to avoid leaving well-hidden traps even for the reasonably cautious. In all events, the well-considered and important limits to the judiciary's powers should be maintained.
¶ 38. Davis remains as of this writing pending on rehearing. Still, it can be read narrowly in order to prevent it from being too broad a sub silentio overruling of decades of case law. Regardless of what else it does, Davis answers the issues raised in this case. I join the majority in affirming.
McMILLIN, C.J., LEE AND CHANDLER, JJ., JOIN THIS SEPARATE OPINION.