# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00046-SCT

*DOUGLAS CROKE d/b/a AIRBASE MOBILE HOME PARK*

*v.*

*SOUTHGATE SEWER DISTRICT*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/4/2002 |
| TRIAL JUDGE: | HON. DOROTHY WINSTON COLOM |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | VICTOR ISRAEL FLEITAS |
| | DAVID C. OWEN |
| ATTORNEY FOR APPELLEE: | H. J. DAVIDSON |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL - 10/23/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     In this property case, concerning sewer system connections, we review the chancellor's grant of summary judgment in favor of Southgate Sewer District (SSD) against Douglas Croke d/b/a Airbase Mobile Home Park (Croke). We find that the trial court did not err in granting SSD's motion for summary judgment without an oral hearing. We also find that the trial court did not err in granting summary judgment and that the trial court did not err in awarding damages to SSD. On cross-appeal, we find that the trial court did not err in refusing to enforce the judgment of the court. We affirm the trial court's judgment.

## FACTS

¶2. These and other parties were before this Court in previous litigation in which this Court upheld the constitutionality of House Bill 1577, 1991 Miss. Local & Priv. Laws ch. 838, which created the SSD, and the constitutionality of certain ordinances passed by the Lowndes County Board of Supervisors. *Croke v. Lowndes County Bd. of Supervisors*, 733 So. 2d 837 (Miss. 1999). The following is an excerpt of background facts from the earlier case:

> During the 1991 Legislative Session, the Mississippi Legislature passed House Bill 1577, 1991 Miss. Local & Priv. Laws Ch. 838, creating the Southgate Sewer District, a single purpose sewer district. That bill also granted all of the necessary powers for the operation of the district. In March of 1994, the Southgate Sewer District passed an ordinance requiring mandatory hook-up of all owners of land upon which a residence or business was located within 100 feet of the property line. The ordinance also provided that failure to do so would be a misdemeanor. In April of 1994, the ordinance was adopted as an ordinance of Lowndes County by the Lowndes County Board of Supervisors. Because of difficulties or discrepancies in the ordinance that thereafter came to light, an amended sewer ordinance was passed and adopted by the district on December 8, 1995. This amended ordinance contains the following provisions: Article I: defines various terms used in the body of the ordinance. Article II: requires that the public sewers be used. Specifically, Section III prohibits constructing or maintaining a private system for the "disposal of sewage" in place of using the public sewers. Section IV makes it mandatory for the owner of all structures occupied by humans at any time to construct toilet facilities herein and to connect to the sewer system within 90 days after official notice, provided that the sewer system is within 100 feet of the subject property line. Article III: provides for private disposal where access is not available to the sewer system; requires a permit from Southgate; requires inspection by Southgate; requires connection to the public sewer system if access is available in the future. Article IV: addresses building sewers and connections. Article V: addresses limitations on the use of the public sewers. Article VI: prohibits malicious, willful, or negligent damage to the sewer works by unauthorized persons. Article VII: outline the powers and authorities of inspectors. Article VIII: provides misdemeanor penalties for violation of the provisions of the ordinance, up to one hundred dollars ($100) per day. Article IX: repeals any prior ordinances and provides that the invalidity of any section, clause, sentence or provision of the ordinance shall not affect the validity of any other parts of the ordinance that can be given effect without the invalid parts.
>
> On December 8, 1996, the Board of Supervisors enacted an "Amended Sewer Use Ordinance of the Board of Supervisors" preceded by the following language:
>
> > AN ORDINANCE ESTABLISHING A GRAY-WATER COLLECTION SYSTEM AND REGULATING THE USE OF PUBLIC AND PRIVATE SEWERS AND DRAINS, PRIVATE

SEPTIC DISPOSAL, THE INSTALLATION AND CONNECTION OF BUILDING SEWERS, AND THE DISCHARGE OF GRAY WATER INTO THE PUBLIC SEWER SYSTEM(S): AND PROVIDING PENALTIES FOR VIOLATIONS THEREOF: FOR THE SOUTH GATE SEWER DISTRICT IN LOWNDES COUNTY MISSISSIPPI.

Be it ordained and enacted by the President and Board of Supervisors of Lowndes County, Mississippi, that a "Gray-Water" Collection System shall be established....

*Croke*, 733 So.2d at 838-39.

¶3. Following the first litigation, Croke refused to grant an easement to SSD without being compensated for it. This easement would have allowed SSD to enter Croke's property without trespassing in order to connect Croke's property to the main collection system that had been constructed bordering Croke's land. SSD later utilized an ordinance adopted by the County's Board of Supervisors which, in effect, stated that since Croke would not grant the easement needed on his property during the time SSD was willing to install the system at no charge, Croke had the legal duty to connect to the collection system and incur the cost. Croke still did not connect to the sewer system.

¶4. On May 14, 1999, SSD sued Croke in the Chancery Court of Lowndes County seeking (1) a mandatory injunction ordering Croke to connect to its sewer system and (2) damages. On October 13, 1999, the SSD filed an Amended Complaint. Croke filed his Answer to Amended Complaint, including counterclaim, requesting the court to award him a reasonable amount in just compensation for the taking of his property to be used in connecting him to the sewer system, on November 17, 1999. On December 7, 1999, SSD filed its Answer to Counterclaim.

¶5. On June 30, 2000, SSD filed its Motion for Summary Judgment. Croke responded on September 19, 2000, seeking to strike certain affidavits submitted by SSD and have SSD's claim against him dismissed or transferred to a special court of eminent domain. On October 10, 2000, SSD filed a Supplement to the

3

Motion for Summary Judgment. The trial court granted summary judgment in favor of SSD on November 2, 2000, and denied all other requested relief.

¶6.     The trial court held a one-day hearing on the issue of damages on April 16, 2001. The trial court then issued an opinion assessing damages in the amount of $45,141.20 against Croke on September 26, 2001. Judgment was entered on October 3, 2001. On December 6, 2001, the chancellor filed an Order Granting Remittitur and Denying Other Relief. A revised judgment, reducing the damages awarded to SSD to $27,084.72[1] was filed on January 4, 2002. From that judgment, Croke filed the appeal now before this Court, with a cross-appeal by SSD.

## ANALYSIS

### I.     WHETHER THE TRIAL COURT ERRED IN GRANTING SSD'S MOTION FOR SUMMARY JUDGMENT WITHOUT ALLOWING AN ORAL HEARING.

¶7.     For a summary judgment motion to be granted, there must exist no genuine issue of material fact, and the moving party must be entitled to judgment as a matter of law. Miss. R. Civ. P. 56(c). The standard of review of a trial court's grant of a motion for summary judgment is de novo. *Hancock v. Mid Am. Servs. Inc.,* 836 So. 2d 762, 764 (Miss. 2003) (citing *Short v. Columbus Rubber & Gasket Co.*, 535 So. 2d 61, 63 (Miss. 1988)). The burden of demonstrating that there is no genuine issue of material fact falls upon the party requesting the summary judgment. This Court will reverse if any triable issue of material fact exists; if not, we will affirm. *Id*.

---

[1]The original amount of damages awarded to SSD was $45,141.20. This amount represented what SSD would have been owed for March 1999 through April 2001 based on the actual number and types of units rented by Croke during that time period. The original damage amount was remitted by forty percent to $27,084.72 because forty percent of the fees collected by SSD were allocated to maintenance and service.

4

¶8.     SSD filed its motion for summary judgment on June 30, 2000. Croke filed his response to SSD's

motion for summary judgment on September 19, 2000. Four months after the initial motion, the trial court

entered summary judgment on November 2, 2000. In a footnote, the chancellor explained the reason for

not holding an oral hearing: "[SSD] requested oral argument on its Summary Judgment Motion. The Court

hereby denies that request as unnecessarily repetitious, as the issues were thoroughly briefed by the

parties." Croke asserts that the trial court deprived him of a valuable right afforded under Rule 56(c) of

the Mississippi Rules of Civil Procedure by granting  SSD's motion for summary judgment without

conducting an oral  hearing.

¶9.     Summary judgment may be entered "if the pleadings, depositions, answers to interrogatories and

admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and

that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c).

¶10.    Croke argues that the trial court's failure to grant an oral hearing was "a procedural error which

affected Appellant's substantial rights as a litigant." He submits that Rule 56(c) itself clearly contemplates

that the trial court will conduct a hearing prior to entering a summary judgment. Rule 56(c) of the

Mississippi Rules of Civil Procedure states in pertinent part the following:

> (c) Motions and Proceedings Thereon. The motion shall be served at least ten days before
> the time fixed for the hearing. The adverse party prior to the day of the hearing may serve
> opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories and admissions on file, together with the affidavits,
> if any, show that there is no genuine issue as to any material fact and that the moving party
> is entitled to a judgment as a matter of law.

Miss. R. Civ. P. 56(c). This Court has recognized that there is not an explicit or implicit right to a hearing

under Rule 56(c), but that there appears to be in other rules. *See Adams v. Cinemark USA, Inc.,* 831

So.2d 1156 (Miss. 2002).   Rule 78 of the Mississippi Rules of Civil Procedure provides:

Each court shall establish procedures for prompt dispatch of business, at which motions requiring notice and hearing may be heard and disposed of; but the judge at any time or place and on such notice, if any, as he considers reasonable may make orders for the advancement, conduct, and hearing of such actions.

To expedite business, the court may make provision by rule or order for the submission and determination of motions not seeking final judgment without oral hearing upon brief written statements of reasons in support and opposition.

In *Adams*, we found that, due to the finality of summary judgments, the trial court committed error by failing to grant a hearing upon a motion for summary judgment. However, finding no unresolved issues of material fact, we concluded that the error was harmless. *Adams*, 831 So. 2d at 1163-64. This case differs from *Adams* in that the summary judgment granted here was not final. Several days later, SSD filed a motion for a damages hearing and Croke filed a motion for reconsideration of the summary judgment. Subsequently, the court held a hearing on damages and then issued a final order on October 3, 2001. The court refused to reconsider the summary judgment granted.

¶11.    In *Adams*, we also discussed the federal courts' definition of "hearing," which "within the meaning of Rule 56 has been held to refer to the final submission of summary judgment motion papers, rather than implying a requirement that a full-fledged hearing with receipt of oral evidence take place with every motion." *Adams*, 831 So. 2d at 1164-65 (citing 11 James Wm. Moore's Federal Practice 56.15[1][a] at 56-200.1 (3d ed. 2002)). Thus, the pleadings and other papers submitted to the court in consideration of the motion could be sufficient to satisfy the Rule 56 hearing requirement in federal court. Furthermore, federal courts have ruled that the decision to grant a summary judgment hearing lies with the trial judge:

Courts generally recognize the advisability of allowing oral argument on summary judgment motions, but even the Fifth Circuit now agrees that the court has the power to order summary judgment without a hearing if it feels that sufficient information is available in the pleadings and the papers in support of and opposition to the motion so that a hearing would be of no utility." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2720.1, at 357 (3d ed. 1998) (footnotes omitted).

6

*Adams*, 831 So. 2d at 1164-65.

¶12.    Given our holding in *Adams*, we find no reversible error here by the chancellor in granting summary judgment without an oral hearing when the issues have been thoroughly presented in the briefs.

## II.    WHETHER THE TRIAL COURT ERRED IN GRANTING SSD'S MOTION FOR SUMMARY JUDGMENT.

¶13.    The law governing summary judgment has been adequately stated by this Court in prior opinions. The burden of demonstrating there is no genuine issue of material fact falls upon the movant.  The court must carefully review all evidentiary matters before it; admissions in pleadings, answers to interrogatories, depositions, affidavits, etc., in the light most favorable to the party against whom the motion for summary judgment is made. *Hancock*, 836 So. 2d at 764.

¶14.    When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere allegations or denials of his pleadings, his response must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.  *Id*.  A fact is "material" if it tends to resolve any of the issues properly raised by the parties in an outcome determinative sense. *Wallace v. Town of Raleigh,* 815 So.2d 1203, 1208 (Miss. 2002); *Armistead v. Minor,* 815 So.2d 1189, 1192 (Miss. 2002); *Hudson v. Courtesy Motors, Inc.,* 794 So.2d 999, 1002 (Miss. 2001); *Robinson v. Cobb,* 763 So.2d 883, 886 (Miss. 2000); *Powell v. City of Pascagoula,* 752 So.2d 999, 1003 (Miss. 1999); *Prescott v. Leaf River Prods., Inc.,* 740 So.2d 301, 309 (Miss. 1999).

¶15.    Croke argues that the trial court erred in granting summary judgment because genuine issues of material fact exist.  Croke asserts the contention that genuine issues of material fact arise because:

1. The trial court overlooked the issue that forcing Croke to connect to the sewer system was a taking of property without just compensation,

2. The trial court overlooked the fact that Croke's equal protection rights were violated when he is being forced to pay to install the needed hardware to connect to the sewer system when others were not,

3. The trial court overlooked Croke's defense of unclean hands to the injunction and money damages, and

4. The trial court overlooked the fact that SSD violated the Real Property Acquisition Policies law.

¶16. Croke contends that if the trial court had taken all this into consideration then it would not have been so quick to grant summary judgment.

¶17. Croke has only revived the same facts that had been argued in *Croke v. Lowndes County Bd. of Sup'rs,* 733 So.2d 837 (Miss. 1999), putting a different twist on them.

¶18. The first fact that Croke argues is a material issue, that being forced to connect to the sewer system is a taking without just compensation, was resolved in *Lepre v. D'Iberville Water & Sewer Dist.*, 376 So.2d 191 (Miss. 1979), a case concerning a water system rather than a sewer system. In *Lepre*, we held,

> The goals to be achieved by enactments such as the statutes and ordinance involved, which compel property owners to connect, are to protect the health of persons residing within congested areas and in order to assure the payment of bonds issued for such purposes. These are legitimate goals, worthy to be protected by and promoted under the police power of a state or any of its duly authorized or legislatively enacted subdivisions.

376 So. 2d at 193. Likewise, the Virginia Supreme Court in *Commonwealth ex rel. State Water Control Bd. v. County Utilities Corp.*, 290 S.E.2d 867 (Va. 1982), offered the most common reason that citizens who have been forced to abandon their own private facilities to attach to public facilities cannot claim an unlawful appropriation: "All citizens hold property subject to the proper exercise of the police power for the common good.... Even where such an exercise results in substantial diminution of property

values, an owner has no right to compensation therefor." ***Id***. at 872. *See also* **Kingmill Valley Pub. Serv. Dist. v. Riverview Estates Mobile Home Park, Inc.,** 182 W.Va. 116, 119, 386 S.E.2d 483, 486 (1989).

¶19.    The laws requiring Croke to connect to the sewer system in this case were declared constitutional in ***Croke v. Lowndes County Bd. of Sup'rs***, 733 So.2d 837 (Miss. 1999). Forcing Croke to connect to the system does not constitute a taking. SSD has already stressed that it in no way cares to even step foot onto Croke's land. SSD has further stated that it does not care how Croke connects to the sewer system that runs along his property line, so long as Croke complies with the law and connects.

¶20.    Second, Croke contends that his equal protection rights will be violated if he is forced to pay the installation costs of the connection because other citizens were not forced to pay. We disagree. From the inception of the plan until August 25, 1995, Croke could have benefitted from SSD connecting his property without cost. Croke misunderstands that SSD never needed an easement to connect him to the system, rather it needed an easement to come onto his land in order to provide him with a free service, a gift of cost-free connection. Croke was notified that after a certain period of time, he would be responsible for the connection costs because the unused money, the money not used to connect a resident allotted by the State for the project, would be returned to the State.

¶21.    A similar situation existed in ***State, Northern Tp. v. Waughtral,*** 1993 WL 328750 (Minn. Ct. App. 1993). In that case, an ordinance made it unlawful to "construct or maintain" a private well for human consumption in certain areas. The ordinance also required people in certain areas to hook up to the township water system and to use that system for all of their human consumption of water. Initially, to encourage people to connect to the system, all work was done free of charge. The township later required

any property owner who did not connect at the initial time of installation to pay the entire cost of connection to the system. The Court of Appeals in Minnesota affirmed the trial court's decision that this action was valid. Here, Croke was treated no differently than any other person who refused to allow SSD to connect him for free. Those people, too, would now have to pay to be connected.

¶22. Croke's third contention is that the trial court overlooked Croke's defense of unclean hands to the injunction and money damages. Croke asserts that SSD fraudulently secured funding for this project by representing to the State that it had acquired all easements to complete the sewer project according to the plans and specifications. This argument revolves around the two issues decided above. Never were any easements required to complete the project. The only use of easements to secure monies from the government was to secure money to provide connection for those people who would grant an easement to SSD. For those easements that might have been represented to the State as secured, though not secured, the money afforded for them was returned. This explains why SSD will no longer provide cost-free connection to Croke.

¶23. Finally, Croke's last argument to support his position that genuine issues of material fact are present is that the trial court overlooked SSD's violation of the Real Property Acquisition Policies law, Miss. Code Ann. §§ 43-37-1 to 43-37-13. This argument is without merit because no property was actually acquired from Croke for the project.

¶24. We find that there were no genuine issues of material fact. House Bill 1577, creating the sewer project, and the ordinance passed by the Board of Supervisors of Lowndes County which requires by law connection to the sewer system were both found valid by this Court. The trial court's grant of summary judgment for SSD was a correct finding. Croke should connect to the system.

### III. WHETHER THE TRIAL COURT ERRED IN AWARDING ANY DAMAGES TO SSD.

¶25.    Croke asserts the same arguments listed in Issue II above to support his claim that damages were incorrect in this case. Croke argues that the damages are wrong because this amounted to a de facto taking of his land and that he should be given compensation for such. Croke further contends that all damages that might have accrued are the fault of SSD, because they were caused by securing funds to develop the project with "unclean hands." This argument is without merit. These contentions have been dealt with in the discussion above and case law further supports the principle that Croke is required to pay back payments for the use the sewer system regardless of whether he actually used the system. In *Lepre*, the defendant claimed no liability for the monthly minimum service charges made against him, which totaled $181.23 because he had not even connected to the water system. 376 So. 2d at 191. This Court found that the defendant had benefitted by the installation of the water system, as did all the other residents of D'Iberville. As we stated then,

> It would now be a gross inequity to allow the District to face financial disaster, because of the failure of some of the people to abide by an ordinance that was intended to be and was passed for the benefit of all the residents of the District. ***The benefit was not limited to just those persons who connected onto the system, and the charge for paying for the system should not be so limited.*** Every owner of property in D'Iberville was interested in and affected by the establishment of a good water and sewer system for sanitary purposes throughout the community, and a distinct benefit accrued to every property owner. The service rendered to the Defendant in this case was the construction and availability of the water system. Such a service made the Defendant impliedly indebted, either through himself or his property.

*Id*. at 194 (emphasis added).

11

¶26.    Furthermore, whether directly or indirectly, Croke has received the  health and safety benefits of this project.  The damages awarded represent what Croke would have paid had he followed the ordinance in the first place. This Court affirms the trial court's award of damages to SSD.

¶27.    SSD asserts the following single issue on cross-appeal:

**I.      WHETHER THE TRIAL COURT ERRED IN NOT ENFORCING THE JUDGMENT OF THE COURT ORDERING THE DEFENDANT TO COMPLY WITH THE LAW AND HOOK-UP TO THE SYSTEM AS A FINAL ORDER OF THE COURT FOR WHICH NO INTERLOCUTORY APPEAL HAS BEEN TAKEN.**

¶28.    SSD argues that Croke failed to correctly appeal the chancellor's judgment on November 2, 2000, and is now barred from raising the issue on appeal.  As stated earlier in this opinion, that order for summary judgment was only a partial order for summary judgment.  The final order in this case was not filed until January 2, 2002.  This Court finds Croke's appeal  was timely filed, and SSD's contention is without merit. The trial court did not err, and the judgment is affirmed.

## CONCLUSION

¶29.    We affirm the decision of the trial court that summary judgment was appropriate, that Croke should connect to the sewer system immediately, and that all damages already assessed should be paid, including any use payments since November 2, 2000. Thus, we affirm the trial court's judgment.

¶30.    **AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL.**

**PITTMAN, C.J., WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DIAZ AND EASLEY, JJ., NOT PARTICIPATING.**

12